# TBH, A Minor, By and Through Next Friends Adam & Theresa Howard v. Dr. Samuel Meyer

[716 A.2d 31]

No. 97-299

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed July 10, 1998

*Louis J. Cattani,* Woodsville, New Hampshire, for Defendant-Appellee.

*Jeffry W. White* of *Theriault & Joslin, P.C.,* Montpelier, for Intervenor-Appellant.

**Skoglund, J.** Intervenor Prudential Property and Casualty Insurance Company appeals a decision of the Orange Superior Court, which granted defendant Dr. Samuel Meyer's motion for summary judgment and held that he was entitled to insurance coverage in this civil suit. Prudential argues that the court erred because Prudential

is not required to defend or indemnify defendant for his nonphysical sexual exploitation of a minor based on Vermont's inferred intent rule and the liability insurance policies' exclusionary clauses. We agree and reverse the summary judgment for defendant and grant Prudential's summary judgment motion.

The facts that give rise to this appeal are as follows: On December 16, 1995, two minor children, T.B.H. and S.T., were playing at S.T.'s house and got dirty. Due to a water problem at S.T.'s house, the children were unable to wash, and they asked S.T.'s mother if they could take a bath at defendant's house. S.T.'s mother called defendant, a close family friend, and asked his permission to use his bathroom — which was granted. While the girls were in defendant's jacuzzi, defendant took nude photographs and video tape of the two girls. Upon learning of the incident, S.T.'s father reported defendant's actions to the police. Defendant was convicted on two counts of violating 13 V.S.A. § 2822(a) (use of a child in a sexual performance),[1] and we affirmed. See *State v. Meyer*, 167 Vt. 608, 610, 708 A.2d 1343, 1345 (1998).

At the time these crimes were committed, Prudential had in effect two liability insurance policies issued to defendant: a Prudential Homeowner's Insurance Policy and a Prudential Personal Catastrophe Liability Policy. The homeowner's policy stated that Prudential would indemnify and defend defendant in suits for damages due to bodily injury so long as the bodily injury was not expected or intended by defendant. The personal catastrophe liability policy stated that Prudential would defend defendant in any suit brought against defendant for personal injury,[2] bodily injury, or property damage and "pay, on [defendant's] behalf, the sums which [defendant] become[s] legally obligated to pay as damages." The policy, however, states that:

---

[1] Section 2822(a) of Title 13 provides that:

> No person shall, with knowledge of the character and content, promote a sexual performance by a child or a performance including a lewd exhibition of the genitals by a child, or hire, employ, procure, use, cause or induce a child to engage in such a performance.

[2] The personal catastrophe liability policy defines "personal injury" as "injury to any person or organization arising out of one or more of the following: shock, mental anguish, mental injury, false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention, malicious humiliation, malicious prosecution, libel, slander, defamation of character, or invasion of privacy."

> We won't pay for or defend any claim which results from an act that is intended by [defendant] or can be expected from the standpoint of a reasonable person to cause bodily injury, including personal injury, or property damage even if the injury or damage is of a different degree or type than actually intended or expected.

> This restriction does not apply where the bodily injury, personal injury or property damage arises from [defendant's] negligence or from [defendant] protecting persons or property.

In May 1996, T.B.H. commenced a civil suit against defendant (1) alleging unlawful invasion of privacy and defamation by portrayal in a false light, (2) seeking to have the original and copies of the video tape and photographs turned over to T.B.H. for destruction, and (3) seeking a permanent restraining order against defendant. Prudential intervened and sought a declaratory judgment concerning its obligations under defendant's two liability policies. T.B.H. subsequently amended her complaint against defendant to include claims of negligence and reckless or intentional infliction of emotional distress.

Prudential then moved for summary judgment, alleging that it had no duty to defend or indemnify defendant because he had been convicted of violating 13 V.S.A. § 2822(a), and such intentional sexual misconduct is excluded from coverage under either of defendant's liability policies. Further, Prudential argued that the inferred-intent rule, that precludes coverage for perpetrators of sexual misconduct because an intention to injure is inferred from the nature of the conduct itself, should control. Defendant cross-moved for summary judgment claiming that the two policies covered his actions, because, as was found at his criminal trial, he did not intend to harm the children. The court ruled that the inferred-intent rule was inapplicable, and finding no evidence of defendant's intent to harm the children, granted defendant's motion and denied Prudential's. Prudential brings this interlocutory appeal pursuant to V.R.A.P. 5.

■ For defendant's acts to be excluded from coverage, Prudential must prove that defendant intended to cause bodily or personal injury to the children when he filmed and photographed them in the jacuzzi. The judge presiding over defendant's criminal trial found no evidence of any intent by defendant to harm the children. Thus, it appears, at first blush, that defendant's conduct is covered under Prudential's policies. In Vermont, however, for cases involving child sexual abuse,

an insured's conduct may fall within that class of conduct that is excluded from coverage if we apply the inferred-intent rule to an insured's actions. See *Nationwide Mut. Fire Ins. Co. v. Lajoie*, 163 Vt. 619, 620, 661 A.2d 85, 86 (1995); *Massachusetts Mut. Life Ins. Co. v. Ouellette*, 159 Vt. 187, 192, 617 A.2d 132, 135 (1992). The inferred-intent rule "'allows a court to infer an actor's intent from the nature and character of his or her acts' and to 'establish conclusively the existence of intent to harm as a matter of law.'" *Aetna Life & Cas. Co. v. Barthelemy*, 33 F.3d 189, 191 (3d Cir. 1994) (quoting *Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457, 460 (3d Cir. 1993)). Further, "[t]his presumption is conclusive 'notwithstanding the insured's assertion of an absence of subjective intent to harm.'" *Id.* at 191-92 (quoting *Wiley*, 995 F.2d at 460)).

In the two cases where we have applied the inferred-intent rule, the insured had either been found guilty of lewd and lascivious conduct with a minor, see *Ouellette*, 159 Vt. at 187, 617 A.2d at 132, or had sexually assaulted a child by forcing the child to have sex with the insured. See *Lajoie*, 163 Vt. at 620, 661 A.2d at 86. Thus, in both cases, the insured had direct physical sexual contact with the victim. In the case before us, the trial court concluded that, because no direct physical contact occurred between defendant and T.B.H., and there were no allegations of sexual abuse or molestation, the inferred-intent rule is inapplicable. We reach a different conclusion.

"Vermont law reflects our enhanced concern for the protection and well-being of minors and the gravity we attach to crimes involving the exploitation of minors." *State v. Searles*, 159 Vt. 525, 528, 621 A.2d 1281, 1283 (1993); see also 13 V.S.A. § 1304 (cruelty to children under ten by one over sixteen); *id.* § 2804b (Cum. Supp. 1997) (displaying obscene materials to minors); *id.* §§ 2821-2826 (Cum. Supp. 1997) (sexual exploitation of children); 33 V.S.A. §§ 4911-4920 (reporting abuse of children); *Barthelemy*, 33 F.3d at 193 ("The reason for the [inferred-intent] rule is inexorably intertwined with the tender age of the child."). In both *Lajoie* and *Ouellette*, we held that the application of the inferred-intent rule was proper because the insured sexually abused a minor. See 163 Vt. at 620, 661 A.2d at 86; 159 Vt. at 192, 617 A.2d at 135. Because of our enhanced concern for the well-being of Vermont's children, in determining the applicability of the inferred-intent rule, we did not and will not render a cramped definition of sexually abusive acts so as to include only those acts which involve physical sexual contact with a minor victim. See, e.g., Black's Law Dictionary 11, 217 (5th ed. 1979) (defining "abuse" as an "excessive or

improper use of a thing, or . . . employ[ing] it in a manner contrary to the natural or legal rules for its use"; defining "child abuse" as "[a]ny form of cruelty to a child's physical, moral or mental well-being"). We now hold that sexual exploitation of a child, in violation of 13 V.S.A. § 2822(a), is sexual abuse of a minor for purposes of the inferred-intent rule.

Defendant's sexual exploitation of T.B.H. was intentional. He perpetrated a crime upon a child by using the girl in a sexual performance. Because defendant's conduct was so certain to result in injury to T.B.H., we infer defendant's intent to injure T.B.H as a matter of law. See *Barthelemy*, 33 F.3d at 192 ("The more likely harm is to result from certain intentional conduct, the more likely intent to harm may be inferred as a matter of law."). Thus, defendant's conduct is not covered by either of his insurance policies.

Next, we consider whether the fact that T.B.H. pleaded negligence and reckless infliction of emotional distress in her amended complaint brought her cause of action under the policy's coverage. We must focus on the factual allegations in T.B.H.'s complaint and not on the legal theories asserted, and unless the complaint alleges facts within the coverage of the policies, Prudential has no duty to defend or indemnify. See *Cooperative Fire Ins. Ass'n v. Bizon*, 166 Vt. 326, 336, 693 A.2d 722, 728 (1997); see also *Titan Holdings Syndicate, Inc. v. City of Keene*, 898 F.2d 265, 271 (1st Cir. 1990) ("In deciding the scope of a liability policy's coverage, a court must compare the policy language with the *facts* pled in the underlying suit to see if the claim falls within the express terms of the policy; the legal nomenclature the plaintiff uses to frame the suit is relatively unimportant.").

The facts that form the basis of these two torts are defendant's intentional acts of promoting a performance of a child that included a lewd exhibition of the child's genitalia, for which he was found guilty. Thus, defendant's conduct was voluntary and intentional, not negligent or reckless. T.B.H.'s emotional harm is a direct result of defendant's intentional acts, and is not caused by any negligent or reckless act on the part of defendant. See *State Farm Fire & Cas. Co. v. Watters*, 644 N.E.2d 492, 498 (Ill. App. Ct. 1994) (holding that negligence claim is not covered under insured's policy if the conduct giving rise to claim was intentional). Because defendant's conduct was intentional and we infer his intent to harm T.B.H. from his conduct, the allegations of the tort of negligence and reckless infliction of

emotional distress do not bring defendant's acts under the policies for coverage.

Because defendant's sexual exploitation of T.B.H. is not covered under defendant's homeowner's or personal catastrophe policies, it follows that Prudential has no duty to defend defendant or indemnify his sexual misconduct. Therefore, we need not address Prudential's other contention that Vermont public policy precludes coverage for sexual exploitation of a child. Suffice it to say that if we compelled Prudential to indemnify defendant's actions we would be, in effect, requiring Prudential to subsidize defendant's sexual misconduct and force Prudential's other policy holders to bear the expense of any passed-along costs. See *B.B. v. Continental Ins. Co.*, 8 F.3d 1288, 1295 (8th Cir. 1993); *Altena v. United Fire & Cas. Co.*, 422 N.W.2d 485, 490 (Iowa 1988) ("The average person purchasing homeowner's insurance would cringe at the very suggestion that [the person] was paying for [criminal sexual abuse of children] coverage; [a]nd certainly [the person] would not want to share that type of risk with other homeowner's policyholders."). We recognize that application of the inferred-intent rule will deny T.B.H. a potential source of compensation for her injuries. Ensuring compensation of the victim, however, is outweighed by precisely fixing both moral and economic liability on defendant. Further, placing "moral liability with the same precision with which we would place economic liability gives force to the [inferred-intent] rule." *Horace Mann Ins. Co. v. Fore*, 785 F. Supp. 947, 955 (M.D. Ala. 1992).

*Summary judgment for defendant is reversed and summary judgment for intervenor is granted.*