2004 VT 63

# Cindy Serecky and Shannon Gioia v. National Grange Mutual Insurance, Utica Mutual Insurance and Cooperative Insurance

[857 A.2d 775]

No. 03-187

Present: Amestoy, C.J., Dooley, Johnson, Skoglund and Reiber, JJ.

Opinion Filed July 9, 2004

*Karen J. Borgstrom* of *Loftus & Borgstrom, PC*, Lebanon, New Hampshire, for Plaintiffs-Appellants.

*Robin Ober Cooley* of *Pierson Wadhams Quinn Yates & Coffrin*, Burlington, for Defendant-Appellee National Grange Mutual.

*Shapleigh Smith, Jr.* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Defendant-Appellee Utica Mutual.

*Richard P. Foote* and *Joan W. D. Donahue* of *Conley & Foote*, Middlebury, for Defendant-Appellee Cooperative.

¶ 1. **Reiber, J.** Plaintiffs Cindy Serecky and Shannon Gioia appeal from the trial court's order granting summary judgment for defendants National Grange Mutual Insurance, Utica Mutual Insurance, and Cooperative Insurance. Pursuant to an assignment of rights, plaintiffs sued defendants for breach of contract and breach of the covenant of good faith and fair dealing based on defendants' refusal to defend or indemnify its insureds, Robert Harlow, Dynamic Discount, Inc., and The Grab Bag, in an underlying sexual harassment action. The trial court granted summary judgment for defendants after concluding that the insurance policies issued by the defendant insurers did not provide coverage for intentional acts of sexual harassment, and thus, they were not obligated to defend or indemnify their insureds. Plaintiffs appealed, arguing that summary judgment was improperly granted. We affirm.

¶ 2. The following facts are undisputed. Plaintiffs were employed by Robert Harlow, the owner of Dynamic Discount and The Grab Bag (a registered trade name). In April 1999, plaintiffs filed a complaint against Harlow, Dynamic Discount, and The Grab Bag, alleging that

Harlow, their direct supervisor, made inappropriate sexual remarks and engaged in inappropriate and offensive touching during working hours. In their complaint, plaintiffs made claims of sexual harassment, intentional infliction of emotional distress, negligent infliction of emotional distress, wrongful discharge, and assault and battery.

¶ 3. At the time of the incidents in the complaint, Harlow, Dynamic Discount, and The Grab Bag were insured under three policies issued by defendants. Pursuant to the terms of a homeowner's policy, Cooperative provided Harlow with personal liability coverage for sums owed because of "bodily injury" caused by an "occurrence" to which coverage applied. The policy defined an "occurrence" as "an accident, including repeated exposures to similar conditions, that results in 'bodily injury' ... during the policy period." Cooperative denied Harlow's request for coverage after concluding that there had not been an "occurrence" within the meaning of its policy because plaintiffs' complaint alleged purposeful conduct. Cooperative identified two exclusions that also supported its decision to deny coverage: one that excluded coverage where bodily injury resulted from "activities related to the 'business' of an insured" and the second that excluded coverage for bodily injury that was "the result of an intentional and malicious act by ... an 'insured.'" Cooperative's policy also excluded coverage for bodily injury "expected by ... or intended by an 'insured.'"

¶ 4. National Grange provided business liability coverage to Dynamic Discount, doing business as The Grab Bag, for sums that it was legally obligated to pay as damages because of "bodily injury" caused by an "occurrence." The policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Like Cooperative, National Grange denied coverage after determining that there had not been an "occurrence" within the meaning of its policy. National Grange explained that, although plaintiffs' complaint included a negligence claim, the facts alleged in the complaint involved intentional acts. National Grange also pointed to two exclusions in its policy that supported its denial of coverage: one that precluded coverage for "bodily injury" "expected or intended from the standpoint of the insured" and one that precluded coverage for "bodily injury" to "[a]n employee of the insured arising out of and in the course of employment by the insured."

¶ 5. Utica similarly provided business liability coverage to Dynamic Discount for sums that it was legally obligated to pay as damages because of "bodily injury" to which the insurance applied. Utica denied coverage after concluding that plaintiffs' complaint did not allege

"bodily injury" caused by an "occurrence" within the meaning of its policy. Like the policies of the other defendants, Utica's policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Utica's policy also excluded coverage for "bodily injury" to "[a]n employee of the insured arising out of and in the course of employment by the insured," as well as "bodily injury" "expected or intended from the standpoint of the insured."

¶ 6. Approximately two years after defendants denied coverage, plaintiffs and the underlying defendants entered into a stipulated agreement pursuant to which the court entered judgment in favor of plaintiffs for $100,000. Harlow, individually, and on behalf of Dynamic Discount and The Grab Bag, later assigned plaintiffs all indemnification rights under the three insurance policies.

¶ 7. In April 2001, plaintiffs filed a complaint against defendants alleging breach of contract and breach of the covenant of good faith and fair dealing based on defendants' refusal to defend or indemnify the underlying defendants. In support of their claims, plaintiffs alleged that defendants acted in bad faith by failing to determine their obligation to indemnify during the pendency of the underlying case, and denying coverage without a reasonable basis for doing so. Defendants moved for summary judgment in October and November 2001 and, after a hearing, the court granted their request.

¶ 8. As an initial matter, the court rejected plaintiffs' argument that the terms of defendants' insurance policies were ambiguous. It also rejected plaintiffs' assertion that defendants had waived their present right to dispute coverage by failing to defend or indemnify Harlow in the underlying action. As the court explained, the underlying action involved different defendants, it did not proceed to trial, and there was no indication as to what issues had been determined. Turning to the merits of plaintiffs' claims, and assuming for the purposes of argument that the assignment of rights was valid, the court identified the gravamen of the underlying complaint as intentional sexual harassment by Harlow against plaintiffs. All of plaintiffs' other claims, the court explained, apart from that of negligent infliction of emotional distress, were embraced by or flowed from this intentional predatory behavior, and were themselves intentional and deliberate acts. In addition, the court rejected plaintiffs' negligent infliction of emotional distress claim as unsupported by the facts alleged in the complaint.

¶ 9. Thus, comparing the allegations in the complaint with the terms of defendants' policies, the court concluded that the complaint did not allege an "occurrence" within the meaning of defendants' policies. The court explained that all of the policies defined an "occurrence" as an "accident," and the definition of "accident" was well-established under Vermont case law. An "accident," the court stated, is "an unexpected happening without intention or design." The court found that Harlow's alleged sexual harassment of plaintiffs was a series of intentional acts and these acts were the operative cause of plaintiffs' alleged harms. The court therefore concluded that defendants' insurance policies, which provided coverage "only if" the cause of such alleged harms was "accidental," did not cover Harlow's intentional acts of sexual harassment.

¶ 10. The court found that certain exclusions within defendants' policies offered an additional basis for denying coverage, assuming arguendo that bodily injury, as defined by the policies, had occurred. Cooperative's policy, for example, excluded coverage for "bodily injury" that resulted directly or indirectly from "an intentional act of an insured." The court explained that, given the intentional nature of the insured's alleged acts, and because plaintiffs' alleged harms were a direct result of these intentional acts, this exclusionary provision alone was sufficient to deny coverage. The court also found that National Grange's and Utica's exclusion for "bodily injury" that was "expected or intended from the standpoint of the insured" independently supported a denial of coverage as well. The court explained that because sexual harassment was substantially certain to injure the person harassed, intent to injure could be inferred as a matter of law from the intent to act. The court thus concluded, as a matter of law, that defendants' insurance policies did not provide coverage to the underlying defendants and therefore, by denying coverage, defendants did not breach their duty to defend or indemnify their insureds. The court consequently granted summary judgment for defendants. In its order, the court also denied plaintiffs' request for further discovery, finding the record sufficient to demonstrate that summary judgment should be granted for defendants. This appeal followed.

¶ 11. On appeal, plaintiffs argue that the court erred in granting summary judgment to defendants. Specifically, they contend that the court erred by: (1) finding that defendants had not waived their present right to dispute coverage by failing to participate in the defense or indemnification of their insureds in the underlying action; (2) concluding, as a matter of law, that defendants' insurance policies

did not cover the underlying claims; (3) rejecting plaintiffs' claim of bad faith as a matter of law; and (4) resolving the coverage issue before discovery was complete.

¶ 12. We review a grant of summary judgment using the same standard as the trial court. *Richart v. Jackson*, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). Summary judgment is appropriate when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(c). A party is entitled to summary judgment if he presents at least one legally sufficient defense that would bar a plaintiff's claims. *Smith v. Day*, 148 Vt. 595, 597, 538 A.2d 157, 158 (1987).

■ ¶ 13. First, we reject plaintiffs' assertion that defendants waived their present right to dispute coverage by failing to participate in the underlying action. Plaintiffs maintain that the underlying judgment against Harlow and his business is binding on the present defendants "as to issues which were or might have been litigated therein." While we have stated that, as a general rule, "an insurer who refuses to defend is bound by issues actually or necessarily litigated in the first trial," *Orleans Village v. Union Mut. Fire Ins. Co.*, 133 Vt. 217, 219, 335 A.2d 315, 317 (1975), in this case, the underlying action did not proceed to trial — it was settled by a stipulated agreement between plaintiffs and the underlying defendants. The stipulation reflects that no issues were determined other than Harlow's agreement that judgment for a sum certain could be entered for plaintiffs. Moreover, as discussed below, defendants had no duty to indemnify the underlying defendants, and thus, defendants justifiably denied coverage. See *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 366, 610 A.2d 132, 134 (1992) (insurer's duty to defend does not extend to circumstances where, as a matter of law, there is no duty to indemnify). We therefore reject plaintiffs' assertion that defendants waived their right to dispute coverage by failing to participate in the underlying action.

¶ 14. We turn next to plaintiffs' assertion that the trial court erred in concluding as a matter of law that defendants' insurance policies did not cover their claims. Plaintiffs argue that coverage should apply to Harlow's intentional acts of sexual harassment if the harm that he inflicted was unintended or unexpected. According to plaintiffs, determining Harlow's intent presents a question of fact, and the court therefore erred in inferring his intent to harm as a matter of law.

Plaintiffs also argue for the first time on appeal that the rule of inferred intent is inapplicable where the named insured is a business, as in the policies issued by National Grange and Utica, because a business cannot form an intent to harm.

¶ 15. We are asked to determine whether Harlow's intentional acts of sexual harassment constitute an "occurrence" within the meaning of defendants' policies. Although plaintiffs included a negligence claim in their underlying complaint, we do not consider this claim because the facts alleged in the complaint are inconsistent with unintentional conduct or injury. See *TBH v. Meyer*, 168 Vt. 149, 153, 716 A.2d 31, 34 (1998) ("We must focus on the factual allegations in [the underlying complaint] and not on the legal theories asserted, and unless the complaint alleges facts within the coverage of the policies, [the insurer] has no duty to defend or indemnify."); *Nationwide Mut. Fire Ins. Co. v. Lajoie*, 163 Vt. 619, 620, 661 A.2d 85, 86 (1995) (mem.) (rejecting negligent infliction of emotional distress claim stemming from insured's alleged sexual abuse of a minor as "simply a disingenuous attempt to create a factual dispute").

¶ 16. Additionally, we need not determine whether the trial court erred by failing to distinguish between the named insured in the business liability policies and the named insured in the homeowner's policy. Plaintiffs waived this argument by failing to raise it below. See *Lane v. Town of Grafton*, 166 Vt. 148, 153, 689 A.2d 455, 457 (1997) ("Failure to raise a reason why summary judgment should not be granted at the trial level precludes raising it on appeal."). In any event, plaintiffs did not make distinct claims against Harlow's business; all of their claims against the business are derivative of their claims against Harlow. Therefore, under all of the policies at issue, the question of whether defendants breached their duty to indemnify their insureds turns on whether Harlow's intentional acts of sexual harassment constitute an "occurrence" within the meaning of defendants' policies.

¶ 17. As previously noted, defendants' policies provide coverage for sums that its insureds owe because of "bodily injury"* caused by an "occurrence"; each policy defines an "occurrence" as an "accident." We construe an insurance policy "according to its terms and the evident intent of the parties as expressed in the policy language." *N. Sec. Ins. Co. v. Perron*, 172 Vt. 204, 209, 777 A.2d 151, 154 (2001). We give disputed terms their "plain, ordinary and popular meaning." *Id.* If a

---

* We assume, for the purposes of argument, that plaintiffs suffered "bodily injury" as that term is defined in defendants' policies.

disputed term is susceptible to two or more reasonable interpretations, the ambiguity must be resolved in favor of the insured. *Id.* The term "accident" is not ambiguous, and in the absence of a specific definition, we give the term its plain meaning. See *id.* at 210, 777 A.2d at 156. Thus, as we have explained, "[a]n accident is generally understood to be an event that is undesigned and unforeseen. It is an unexpected happening." *Id.* at 211, 777 A.2d at 156 (internal quotation marks and citations omitted).

¶ 18. In *Perron*, we considered the terms of an insurance policy that similarly defined an "occurrence" as an "accident." See *id.* at 209, 777 A.2d at 155 (policy defined an "occurrence" as "an accident, including exposure to conditions, which results, during the policy period, in: a. bodily injury"). In that case, we read the definition of "occurrence" together with an exclusion precluding coverage for bodily injury "expected or intended" by the insured. See *id.* at 213, 777 A.2d at 158. In doing so, we found it clear and unambiguous that if coverage was sought because of an accident that resulted in injury that was neither expected nor intended, there was an "occurrence" and, consequently, there could be coverage. *Id.* Because defendants' policies contain a similar definition of "occurrence" as that found in *Perron*, and because all similarly contain an exclusion for bodily injury "expected or intended by the insured," we approach the question presented in this appeal in the same manner. Thus, we read the definition of "occurrence" together with the policies' specific exclusion for intentional acts to determine if there is coverage. *Id.* at 210 n.4, 777 A.2d at 155 n.4.

¶ 19. This Court has held that an "accident" can occur despite the intentional nature of an insured's conduct. *State v. CNA Ins. Cos.*, 172 Vt. 318, 328, 779 A.2d 662, 670 (2001) (where "occurrence" defined as "an accident, including continuous or repeated exposure to conditions, which results in ... property damage neither expected nor intended [by] the insured," the unexpected nature of an "accident" describes harm that is caused, rather than act involved). The central question in conducting this analysis is whether the harm that resulted from the intentional act was expected or intended by the insured. *Id.*; see also *Perron*, 172 Vt. at 213-14, 777 A.2d at 158 (determination of whether insured's actions constituted an occurrence involves an inquiry into whether he expected or intended to harm the victims by his actions). "An insured expects an injury if he or she is subjectively aware that injury is substantially certain to result." *Perron*, 172 Vt. at

213-14, 777 A.2d at 158 (internal quotation marks, citation, and brackets omitted). In other words, "if the insured did not intend to inflict the injury on the victim by his intentional act, and the act was not so inherently injurious that the injury was certain to follow from it, the act as a contributing cause of injury would be regarded as accidental and an 'occurrence.'" *Id.* at 214, 777 A.2d at 158.

¶ 20. Whether an insured should expect injury from an intentional act generally presents a factual question, but we have recognized that "[s]ome actions . . . are so likely to result in injury that, as a matter of law, the court will find that the injury did not result from an accident regardless of the actor's subjective intent or expectations." *Id.* Thus, "[u]nder the so-called inferred-intent rule, courts conclusively presume intent to harm as a matter of law based on the nature and character of the insured's alleged acts, regardless of whether the insured asserts that he or she had no subjective intent to injure." *Id.*; see also *Espinet v. Horvath*, 157 Vt. 257, 259, 597 A.2d 307, 309 (1991) (recognizing that although the question of whether an insured expected or intended an injury to occur is a subjective inquiry, "an insured must be taken to have intended an injury where the circumstances indicate that he knew his act would damage the injured party"); *Cooperative Fire Ins. Ass'n of Vermont v. Bizon*, 166 Vt. 326, 334, 693 A.2d 722, 727-28 (1997) (recognizing that where circumstances are not equivocal that injury would result, subjective intent of the insured to harm is irrelevant); *State v. Glens Falls Ins. Co.*, 137 Vt. 313, 317, 404 A.2d 101, 104 (1979) (same).

¶ 21. Prior decisions of this Court have applied the inferred-intent rule to claims arising from an adult's sexual abuse of a minor. *Mass. Mut. Life Ins. Co. v. Ouellette*, 159 Vt. 187, 192, 617 A.2d 132, 135 (1992); *Lajoie*, 163 Vt. at 620, 661 A.2d at 86; *Meyer*, 168 Vt. at 149-50, 716 A.2d at 32. In *Lajoie*, 163 Vt. at 620, 661 A.2d at 86, we extended the application of the inferred-intent rule to claims of nonsexual verbal and psychological abuse and destruction of familial relationships where the nucleus of the underlying action was sexual abuse. We explained that it was "inconceivable that sexual abuse of a minor by a family member [would] not be accompanied by other abuse and [would] not destroy familial relationships." *Id.*

¶ 22. We reached a similar conclusion in *Meyer*, 168 Vt. at 152-53, 716 A.2d at 34. The homeowner's policy at issue in that case excluded coverage for bodily injury expected or intended by the insured. *Id.* at 150-51, 716 A.2d at 32-33. We held that the insurer was not required to defend or indemnify its insured on claims against the insured for

intentional nonphysical sexual exploitation of a minor because the insured's conduct was so certain to result in injury that his intent to injure could be inferred as a matter of law. *Id.* at 152-53, 716 A.2d at 34. We acknowledged that the application of the inferred-intent rule would deny the victim a potential source of income for her injuries, but we found this concern outweighed by the need to fix both moral and economic responsibility on the insured. *Id.* at 154, 716 A.2d at 35.

¶ 23. We declined to apply the rule of inferred-intent to claims stemming from a minor's sexual molestation of another minor, finding that the question of intent to injure should be determined on a case-by-case basis. *Perron*, 172 Vt. at 215-16, 777 A.2d at 159-60. We explained that inferring an intent to harm as a matter of law in cases involving minors who are abusers would be inconsistent with provisions in Vermont criminal law. See *id.* at 216, 777 A.2d at 160 ("[I]f minors cannot appreciate the nature and consequences of, and therefore lack the ability to consent to, sexual activity for purposes of Vermont criminal law, it would be inconsistent to hold that, for purposes of Vermont civil law, when minors engage in sexual acts, *as a matter of law*, they intend the consequences of their acts.") (emphasis in original).

¶ 24. While application of the inferred-intent rule has thus far been limited to claims related to an adult's sexual abuse of a minor, we find it equally applicable in cases involving sexual harassment. Like other forms of sexual abuse, we conclude that sexual harassment is so likely to result in injury that, as a matter of law, the injury cannot be said to be the result of an "accident," regardless of the actor's subjective intent or expectation. Cf. *J.C. Penney Cas. Ins. Co. v. M.K.*, 804 P.2d 689, 700 n.17 (Cal. 1991) (en banc) (rejecting notion of "accidental" child molestation as implausible). To say that Harlow did not intend to inflict injury through his intentional acts of sexual harassment "flies in the face of all reason, common sense and experience." *CNA Ins. Co. v. McGinnis*, 666 S.W.2d 689, 691 (Ark. 1984) (finding it untenable for stepfather to claim that he did not intend to injure six-year old stepdaughter through repeated and continuous sexual abuse). Sexual harassment is not the type of act that only occasionally results in harm — it is inherently harmful. See *J.C. Penney Cas. Ins. Co.*, 804 P.2d at 698 (expressing similar sentiment with respect to acts of child molestation). In other words, the intent to act is the equivalent of the intent to harm. See *id.* ("Some acts are so inherently harmful that the intent to

commit the act and the intent to harm are one and the same."). We therefore hold that the rule of inferred-intent applies to claims arising from acts of sexual harassment. Our conclusion is consistent with policy concerns underlying the rule; requiring defendants to indemnify plaintiffs in this case would in effect require defendants to subsidize Harlow's sexual misconduct and force defendants' other policyholders to bear the expense of any passed-along costs. See *Meyer*, 168 Vt. at 154, 716 A.2d at 35 (voicing same concern in context of insured's nonphysical sexual abuse of minor); *Ouellette*, 159 Vt. at 192, 617 A.2d 135 (stating that it would be inappropriate to transfer the financial costs incurred incidental to an insured's sexual abuse of minor to other policyholders).

¶ 25. Other courts interpreting similar policy language have reached a similar result. See, e.g., *Commercial Union Ins. Cos. v. Sky, Inc.*, 810 F. Supp. 249, 252-55 (W.D. Ark. 1992) (mem.) (alleged sexual harassment did not result from "occurrence" within meaning of general liability policy excluding coverage for bodily injury expected or intended from standpoint of insured; there was no contention that insured's actions were anything other than volitional, or that insured was incapable of forming intent); *Sena v. Travelers Ins. Co.*, 801 F. Supp. 471, 476 (D.N.M. 1992) (mem.) (applying New Mexico law) (inferring insured's intent to harm as a matter of law in cases involving sexual misconduct); *Old Republic Ins. Co. v. Comprehensive Health Care Assocs.*, 786 F. Supp. 629, 632-33 (N.D. Tex. 1992) (applying Texas law) (holding that insurer had no duty to defend a complaint alleging various causes of action arising out of alleged sexual harassment because intentional acts are not "occurrences" as term is commonly defined in insurance policies), *aff'd on other grounds*, 2 F.3d 105 (5th Cir. 1993); *Continental Ins. Co. v. McDaniel*, 772 P.2d 6, 8 (Ariz. Ct. App. 1988) (insured's acts of sexual harassment so certain to cause injury to victim that intent to harm inferred as a matter of law, despite insured's statements that he did not intend harm); *Greenman v. Michigan Mut. Ins. Co.*, 433 N.W.2d 346, 349 (Mich. Ct. App. 1988) (per curiam) (insured's sexual harassment of co-worker not covered under terms of homeowner's policy because, among other reasons, insured's intentional acts could not be deemed an accidental occurrence); *Russ v. Great Am. Ins. Cos.*, 464 S.E.2d 723, 725-26 (N.C. Ct. App. 1995) (injuries suffered as a result of acts of sexual harassment not "accidents," and thus, are not bodily injuries caused by "occurrences," because sexual harassment is substantially certain to cause injury to person harassed); *State Farm Fire & Cas. Co. v. Barrett*, 530

S.E.2d 132, 136 (S.C. Ct. App. 2000) (per curiam) (inferring an intent to harm as a matter of law when a person sexually assaults, harasses, or otherwise engages in sexual misconduct towards an adult); *Smith v. Animal Urgent Care, Inc.*, 542 S.E.2d 827, 832 (W. Va. 2000) (claim based on sexual harassment does not come within definition of "occurrence," defined as an "accident," in insurance liability policy).

¶ 26. Because we conclude that Harlow's intent to harm can be inferred as a matter of law from the nature of his acts, the harm that resulted from his acts does not constitute an "accident" within the meaning of defendants' policies. Thus, there is no "occurrence" and, consequently, there is no coverage. Based on our conclusion, we reject plaintiffs' assertion that coverage should apply under National Grange and Utica's business liability policies because the policies do not contain a specific exclusion for sexual harassment.

¶ 27. We find plaintiffs' remaining arguments on appeal equally without merit. First, based on our conclusion that defendants were not obligated to indemnify the underlying defendants, we reject plaintiffs' assertion that the court erred in dismissing their claim of bad faith as a matter of law. To establish bad faith, plaintiffs needed to show that the insurance company had no reasonable basis to deny benefits of the policy, and the company knew or recklessly disregarded the fact that no reasonable basis existed for denying the claim. *Bushey v. Allstate Ins. Co.*, 164 Vt. 399, 402, 670 A.2d 807, 809 (1995). We concluded above that defendants' policies do not cover the acts alleged in plaintiffs' underlying complaint. Thus, as a matter of law, defendants did not act in bad faith in denying coverage. See *Myers v. Ambassador Ins. Co.*, 146 Vt. 552, 557, 508 A.2d 689, 692 (1986) (determination of whether insurer acted in bad faith presents a question of law where, based on uncontroverted evidence, "a reasonable man following the law can draw but one conclusion on the issue").

¶ 28. For a similar reason, we also reject plaintiffs' assertion that the court erred in granting summary judgment before discovery was complete. Plaintiffs maintain that if the court had ruled on their motion to compel answers to interrogatories before determining the coverage issue, they might have been able to show that defendants acted in bad faith by denying coverage without conducting a proper investigation. As discussed above, the undisputed evidence shows that defendants did not act in bad faith, but rather justifiably denied coverage because their policies do not cover intentional acts of sexual harassment. The

record shows that plaintiffs had "an adequate time for discovery," see *Bushey*, 164 Vt. at 405, 670 A.2d at 811, and we find no error in the timing of the court's summary judgment decision.

¶ 29. Based on our conclusion that there was no "occurrence" within the meaning of defendants' policies, we do not address plaintiffs' arguments concerning the applicability of the "business pursuits" exclusion found in Utica's and National Grange's policies.

*Affirmed.*