2007 VT 93

**James W. MURDOCH and Alice Murdoch v. TOWN OF SHELBURNE**

[939 A.2d 458]

No. 06-023

¶ 1. August 29, 2007. The Town of Shelburne appeals the superior court's summary judgment ruling in favor of taxpayers James and Alice Murdoch, arguing that the court erred in determining that the Town lacked statutory authority to correct an error in taxpayers' abstract of assessed value after completion of the Town's regularly scheduled grievance meetings but before finalization of the grand list. Based on our conclusion that the Town acted within its authority, we reverse the superior court's ruling and enter judgment in favor of the Town.

¶ 2. The material facts are undisputed. Following a town-wide reappraisal, the Town's assessor sent taxpayers a notice, dated May 30, 2003, that effective April 1, 2003, the assessed value of their property had been increased from $455,600 to $699,100. The notice informed taxpayers that the assessor would hold a grievance meeting on June 17, 2003, to consider any written objections to the change filed by June 16. Taxpayers filed no objection and did not appear at the meeting. Then, six days after holding its grievance meeting, the Town sent taxpayers a second notice and letter, dated June 23, 2003, informing them that an "error" had been "discovered" in their initial reassessment, that the previously noticed change in appraisal value was "incorrect," and that the new assessment was $1,221,400. The letter and notice set forth a "new appeal deadline" of July 8, 2003.

¶ 3. Taxpayers filed a written objection to the new assessment, arguing that it was untimely and requesting an explana-

tion for the change and any documents or other information used in the recalculation. The assessor heard taxpayers' grievance on July 11, 2003, and on July 15 notified them that it had been denied. Taxpayers then appealed the assessor's ruling to the Board of Civil Authority (BCA). See 32 V.S.A. § 4404(a) (providing that a taxpayer may appeal from the listers' decision to the BCA within fourteen days of the notice thereof). While the BCA appeal was pending, taxpayers filed a V.R.C.P. 75 complaint and motion for preliminary injunction in the superior court, asserting that the assessor was without authority to reassess the property after the initial grievance period had expired, and seeking to enjoin the Town from applying the second reassessment. The trial court denied the motion for a preliminary injunction in December 2003. The following month, the BCA met and denied taxpayers' appeal. Taxpayers appealed the BCA ruling to the superior court, where the matter remains pending. See 32 V.S.A. § 4461(a) (providing that a taxpayer who is aggrieved by a decision of the BCA may appeal to the director of the division of property valuation or the superior court).

¶ 4. In the meantime, the parties filed cross-motions for summary judgment in the Rule 75 proceeding. Following a status conference and hearing, the trial court issued a written decision in November 2005. Construing the statutory scheme governing taxpayer grievances, the court concluded that "the intention of the Legislature was that all grievances from changes in property [valuation] be heard at one grievance meeting" and that the Legislature did not intend to give a town assessor the ability to correct errors in property valuation after the grievance meeting was held. The court thus ruled that the second reassessment was unlawful, and that taxpayers were entitled to summary judgment. A subsequent motion to alter or amend the judgment was denied. This appeal followed.

¶ 5. We review a grant of summary judgment using the same standard as the trial court. *Serecky v. Nat'l Grange Mut. Ins.*, 2004 VT 63, ¶ 12, 177 Vt. 58, 857 A.2d 775. Summary judgment is appropriate when, taking all of the allegations of the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* Our review of legal issues such as the instant one, which concerns the interpretation of a statute establishing the timing for grieving property tax assessments, "is nondeferential and plenary." *M.T. Assocs. v. Town of Randolph*, 2005 VT 112, ¶ 6, 179 Vt. 81, 889 A.2d 740. In construing a statute, our paramount goal is to effectuate the Legislature's intent as evidenced by the "plain, ordinary meaning of the language used." *Earth Constr., Inc. v. Vt. State Agency of Transp.*, 2005 VT 82, ¶ 5, 178 Vt. 620, 882 A.2d 1172 (mem.) (quotations and citations omitted). If a statute's meaning is clear, "we enforce it according to its terms." *Ran-Mar, Inc. v. Town of Berlin*, 2006 VT 117, ¶ 5, 181 Vt. 26, 912 A.2d 984. If the provision's meaning is in doubt, we must broaden our inquiry to "determine its intent from a consideration of the whole and every part of the statute, the subject matter, [and] the effects and consequences" in order to create a "harmonious whole." *Id.* (quotations and citations omitted). We will avoid a construction that renders any portion of a statute ineffective or superfluous. *In re L.A.*, 2006 VT 118, ¶ 11, 181 Vt. 34, 912 A.2d 977.

¶ 6. A brief review of the statutory background is helpful to understanding the issue presented here. Chapter 129 of Title 32 is a comprehensive system that establishes the timeliness and processes for the annual development of the property tax grand list in each community. In brief, chapter 129 requires towns, on an annual basis, to gather property inventories, make fair market value appraisals of properties, generate individual tax lists

and compile them into the abstract, notify individual taxpayers of the assessments, provide an opportunity for grievances, make corrections, and file the grand list with the town clerk. Subchapter 3, which includes the section under scrutiny in this case — 32 V.S.A. § 4111(f) — deals with the development and publication of the individual lists or abstracts. See 32 V.S.A. §§ 4081-4116. Section 4111, entitled "Abstracts of individual lists," sets forth the steps that town listers[1] must follow once they have completed their appraisal process. Under this provision, the listers must compile a book containing the abstract of individual listed values within the town and lodge it with the town clerk, *id.* § 4111(a), (d); attach a signed certificate attesting to their belief that they have "set down" the valuation of all taxable property of each person named therein, *id.* § 4111(b); provide notice that the book will become the town's official grand list unless "cause to the contrary" is shown, *id.* § 4111(c); and convene a meeting at a specified time and place "to hear all grievances and make corrections in such list." *Id.*

¶ 7. The statute goes on, in subsection (e), to require personal notice to all persons affected "of any change in the appraised value" of their property "and also . . . of the amount of such change and of the time and place fixed in the public notice hereinafter provided for, when persons aggrieved may be heard." *Id.* § 4111(e). The subsection additionally requires that the listers post notices in the town clerk's office and other public places "setting forth that they have completed and filed such book as an abstract and the time and place of the meeting for hearing grievances and making corrections." *Id.* Personal notice must be effected by prepaid first class mail, and unless sent by

registered or certified mail, "in the case of any controversy subsequently arising it shall be presumed that the personal notices were not mailed as required." *Id.*

¶ 8. Subsection (f) — the provision at the center of the instant lawsuit — provides as follows:

> (f) If the listers discover any error or omission in such abstract, they shall correct the same and shall forthwith give notice thereof in writing by mail, postage prepaid, or by personal delivery to the taxpayer whose list is thus changed, unless such change was made in his or her presence.

Subsection (g) requires that objections be filed with the listers in writing, and entitles the taxpayer to appear at the grievance meeting established by subsection (e) in person or through counsel and to submit such evidence as "shall be pertinent." Finally, subsection (h) provides that any failure by the listers "to perform any of the requirements hereinbefore provided touching the form of the aforesaid abstract" shall not invalidate the list.

¶ 9. Several additional statutory provisions are also pertinent to our understanding of the issue raised in this appeal. Section 4221 of Title 32 sets forth in greater detail the deadlines and procedures governing the grievance meeting, specifying that the listers "shall meet at the place so designated by them and on that day and from day to day thereafter shall hear persons aggrieved by their appraisals" and "shall add to the aforesaid abstract certificates setting forth such corrections therein as they shall determine," forwarding a copy of the certificate to each taxpayer affected. Section 4224 specifies the deadline and mailing requirements for sending "notice in writing of such amendments," as well as the taxpayer's right to appeal from the listers' decision to the BCA. Finally, to com-

---

[1] Under the Town of Shelburne's charter, the town assessor functions as municipal listers do elsewhere.

plete this portion of the process, 32 V.S.A. § 4151(a) sets forth the deadline by which "the listers shall make all corrections in the abstracts and shall lodge such completed book in the office of the town clerk." Once lodged and certified by the clerk, the abstract "shall become the grand list of such town" subject, however, to any further "corrections . . . provided by law." *Id.* § 4151(c). As the Town here observes, the latter provision undoubtedly refers to § 4261, which provides that, when property is omitted from the grand list "or an obvious error is found, the listers, with the approval of the selectboard, before December 31, may supply such omissions or correct such errors."[2]

¶ 10. With this overall statutory scheme in mind, we turn to the issues raised in this appeal. As noted, the trial court concluded that the assessor lacked authority to conduct a second reassessment and grievance proceeding. Specifically, the court held "that the intention of the Legislature was that all grievances from

---

[2] It is also worth noting that § 4341 automatically extends several of the statutory deadlines an additional fifty days for towns with more than 5000 inhabitants. Given the benefit of the fifty-day extension, the assessor here was required to file the property-tax abstract with the town clerk by June 24, 2003, 32 V.S.A. § 4111(a); to hold a grievance meeting within fifteen days thereafter, or by July 9, 2003, in order "to hear all grievances and make corrections in such list," *id.* § 4111(c); to complete the hearing process by July 22, 2003, *id.* § 4221; and to mail all notices of corrections by July 29, 2003. *Id.* § 4224. The final corrected abstract had to be filed with the clerk for certification as the Town's grand list by August 14, 2003. *Id.* § 4151(a). As noted in the text, the Town complied with the statutory time limits despite the additional notice and grievance hearing.

changes in property evaluation be heard at one grievance meeting." The Town argues, to the contrary, that 32 V.S.A. § 4111(f) expressly authorized its assessor to correct "any error or omission" in the abstract at any time before the grand list was lodged and the language contains no time limit on when the correction is made as long as the general time limits in the statute are met.

¶ 11. We cannot agree with the superior court's holding that the statute does not allow more than one grievance meeting. In fact, a later section in chapter 129 refers to "meetings of listers . . . held to hear grievances." *Id.* § 4341(2). We note that the sections on the timing of grievance hearings provide that they will be held on the day specified in the notice from the listers "and from day to day thereafter." *Id.* §§ 4221-4222. In *Miller v. Town of West Windsor*, 167 Vt. 588, 590, 704 A.2d 1170, 1173 (1997) (mem.), we described the identical language in the statute providing for appeal hearings of the BCA as authorizing "flexibility." In that case, the BCA started hearings a week after the expiration of the statutory time limit "and continued them on several successive dates" thereafter, and yet we affirmed a trial court's determination that the town substantially complied with the statute.

¶ 12. On the other hand, we agree with the Town that § 4111(f) authorizes, indeed requires, town listers or assessors to "correct" an erroneous taxpayer assessment and give taxpayers the opportunity to grieve the correction. We also agree with the Town that nothing prohibits that correction from occurring after the initial grievance period has passed but before the grand list has been lodged with the town clerk. Without explicitly stating any timing restriction, § 4111(f) provides that listers who discover errors or omissions in the abstract "shall" correct the errors or omissions and "shall" notify the taxpayer affected by the change. The subsec-

tion does not contain any language negating the authority of towns to correct errors or omissions once the notified general grievance meeting has been held. Nor does any language in the subsection suggest that if the listers discover an error or omission after the general grievance meeting but before the grand list has been finalized and lodged with the town clerk, the listers are powerless to change the error or omission. While § 4111(f) does not explicitly set forth a separate grievance procedure following the correction of an error or omission, the subsection does require the town to notify the taxpayer of the correction — ostensibly to allow the taxpayer to grieve the correction.

¶ 13. In light of the statutory language, the Legislature apparently intended to *require* listers to correct errors and omissions in the abstract as long as the abstract remains open, *id.* § 4111(f) (providing that town listers who discover errors or omissions in the abstract "shall" correct them), and, once the grand list is filed with the town clerk, to *allow* the listers to correct an omission or "obvious error" with the approval of the selectboard. *Id.* § 4261 (providing that town listers who find omissions or obvious errors in the grand list "may" correct such errors with the approval of the selectboard).[3] This

[3] We find no support for the dissent's conclusion that the Legislature intended § 4111(f) "merely to state – in summary fashion – the listers' duty to make corrections based upon the taxpayer's showing of error at the grievance proceeding." *Post,* ¶ 18. This interpretation of the statute foreclosing the listers from correcting any errors not raised by taxpayers at grievance proceedings is contrary to the plain language of § 4111(f), which compels the listers to correct any error or omission that they "discover." Nothing in § 4111(f) restricts the listers' statutory duty in the manner urged by the dissent,

construction of the statute is consistent with the constitutional and statutory mandates that each property should be burdened with only its equitable share of the common expense of government so as to protect individual taxpayers, as well as the collective taxpaying community, from arbitrary assessments. See *M.T. Assocs.,* 2005 VT 112, ¶¶ 8, 13 (noting that "listers are required [by statute] to appraise property at fair market value," and that the Proportional Contribution Clause requires towns to "appraise . . . property at a uniform rate"). Indeed, it would be contrary to the purpose of the statutory scheme for us to interpret § 4111(f) as precluding town listers from correcting omissions and mistakes before the grand list has been finalized. Under such a scenario, taxpayers could use an erroneously appraised property as a comparable, thereby threatening the overall equity of a town's appraisals. Nothing in the statute requires such a result.

¶ 14. Our conclusion also reflects the fact that taxpayers have suffered no prejudice from the Town's corrective action, not even a delay in reaching a final action of the appraiser. As noted in footnote 2, *supra,* the assessor had until July 22 to complete the hearing process and until July 29 to mail notices of the assessor's action on grievances. He completed taxpayers' grievance on July 11 and notified taxpayers on July 15, well before the statutory deadline. Thus, taxpayers are seeking relief based on an asserted technical noncompliance with the statutory requirements even though they suffered no harm from that asserted noncompliance and still have an appeal to challenge the merits of the assessor's action.

¶ 15. Finally, we find unavailing taxpayers' argument that the Town's refusal to identify the alleged error negated the application of § 4111(f). As a preliminary

and thus we decline to impose such a limitation. .

matter, we note that one of taxpayers' letters to the Town suggests that, in response to their request for documents explaining the nature of the discovered error, the Town sent taxpayers a revised cost sheet which taxpayers presumably could have compared to the original tax sheet. Thus, the record suggests that taxpayers know the basis for the Town's error. In any event, while taxpayers' frustration over the Town's refusal to identify the discovered error is understandable, it is not particularly relevant to the legal issue on appeal. However the assessor reached his original appraisal, he found it in error as shown by the corrected appraisal. Taxpayers were given an opportunity to challenge the validity of the revised assessment, and in fact took advantage of that opportunity. The statute requires nothing more.

*The superior court's November 7, 2005 decision is reversed, and judgment is entered for the Town of Shelburne.*

¶ 16. **Skoglund, J.,** dissenting. The trial court here ruled that the Town assessor lacked authority to conduct a second reassessment and grievance proceeding that resulted in an assessed value more than twice that originally assigned to taxpayers. The Town claims, and the majority here concludes, that the Town was entitled to conduct a second reassessment — and presumably additional ones as well — up until the time when the grand list was formally lodged, under the authority of 32 V.S.A. § 4111(f), which authorizes town listers to correct "any error or omission" in the abstract. The language of the provision and the overall statutory scheme of which it is a part do not, however, support this conclusion. Accordingly, I respectfully dissent.

¶ 17. The underlying facts and statutory background are ably set forth in the majority opinion and need not be repeated. As the majority notes, 32 V.S.A. § 4111(e) sets forth the town listers' duty

to notify taxpayers of any changes in their assessment and, significantly, requires personal notice of their right to file a grievance concerning such changes, as well as notice of the time and place where the grievance meeting will occur. The Town essentially argues that 32 V.S.A. § 4111(f) provides a separate and independent basis for the listers to make changes in order to correct any "omission or error" in the abstract. Yet, unlike subsection (e), subsection (f) makes virtually no provision for the taxpayer to grieve the change, and requires no notice of the time and place where such a grievance may be brought. To remedy what would represent, under the Town's theory, a glaring omission and to provide a minimal level of due process, the Town here seeks, in effect, to graft the notice and hearing provisions of subsection (e) onto subsection (f). These procedural protections are not provided for in the statute, however, and it is not within this Court's power to rewrite the law. See *Caledonian-Record Publ'g Co. v. Vt. State Coll.*, 2003 VT 78, ¶ 9, 175 Vt. 438, 833 A.2d 1273 (where the Legislature has omitted language from a statute, "we are constrained not to rewrite it") (citation omitted).

¶ 18. A closer reading of the language and context of subsection (f) suggests an entirely different purpose, albeit a more limited one. The statutes here refer repeatedly to the listers' duties, at the conclusion of the grievance proceeding, to make corrections to individual lists as necessary, 32 V.S.A. §§ 4111(c), 4151(a); to generate "certificates setting forth such corrections" as they shall determine, *id.* § 4221; and to promptly provide notice of all such corrections to the taxpayer, *id.* § 4224. The provision in § 4111(f) authorizing the assessor to "correct" any discovered error or omission is perfectly consistent with this language and scheme, and suggests that its intent was merely to state — in summary fashion — the listers'

duty to make corrections based upon the taxpayer's showing of error at the grievance proceeding. This construction is supported by the concluding language of the provision, requiring notice to the taxpayer of any correction either by mail or personal delivery "unless such change was made *in his or her presence.*" *Id.* (emphasis added). Although the taxpayer's personal appearance at the grievance meeting is not required, *id.* § 4222, it is logical and reasonable to conclude that the reference here is to errors discovered, and corrections made, in the taxpayer's "presence" through the bringing of a challenge at the grievance meeting itself.

¶ 19. The Town argues that, so construed, subsection (f) would "duplicate" the provisions of § 4111(c), which provides that the listers will meet "to hear all grievances and make corrections in such list," and § 4221, which requires that, once the taxpayer's objections have been heard and decided, the listers "shall add to the aforesaid abstract certificates setting forth such corrections therein as they shall determine" and forward a copy of such certificate to the taxpayer affected. As these two provisions illustrate, however, many of the steps set forth in § 4111 are restated or developed at greater length in one or more additional sections. Section 4111(c) provides, for example, that the listers "will meet at some place . . . designated by them to hear . . . grievances." This requirement is restated in § 4221 ("[o]n or before May 20, the listers shall meet at the place so designated") and § 4222 ("[t]he listers shall meet at the time and place designated in such notice to hear all persons aggrieved"). The statutory scheme is, in fact, replete with such redundancies. Prior and subsequent references to the listers' duty, summarized in § 4111(f), to correct errors shown at the grievance meeting is thus perfectly consistent with the overall statutory scheme.

¶ 20. I would reject, therefore, the Town's claim that § 4111(f) authorized the assessor to correct taxpayers' assessments apart from correcting any error or omission shown at the grievance meeting. The basic question remains, however, whether the Town was otherwise authorized to send a second notice of changed valuation and schedule a second meeting and appeal period, or whether — as the trial court here concluded — it was the intention of the Legislature that all grievances from changes in property valuations be heard at one grievance meeting. The language and overall statutory scheme support the trial court's conclusion.

¶ 21. That the Legislature contemplated *one scheduled meeting* — taking place if necessary over the course of several days — finds ample support in the text, which repeatedly employs the definite article and singular case in referring to the grievance meeting. See *id.* § 4111(e) (listers shall notify affected taxpayers of "the time and place fixed in the public notice hereinafter provided for, when persons aggrieved may be heard," and public notices shall identify "the time and place of the meeting for hearing grievances and making corrections"); *id.* § 4111(g) (persons who feel aggrieved shall "on or before the day of the grievance meeting" file objections in writing). The one provision cited by the majority where "meetings" appears, *id.* § 4341, is merely a list of meetings and hearings that may be subject to extended deadlines based upon the town's population, not a substantive provision dealing with the assessment process. The majority also purports to rely on § 4221, which provides that the listers shall meet at the place designated for the grievance hearing and "from day to day thereafter." But this language *suggests that the statute contemplates one* scheduled hearing continued for as many days as are necessary to complete the grievance process, not *multiple* scheduled meetings. The majority also cites *Miller v. Town of West Windsor,*

594

167 Vt. 588, 590, 704 A.2d 1170, 1173 (1997) (mem.), where we recognized that the "day to day" language implies some "flexibility," permitting a town to commence the grievance hearing several days past the fourteen-day deadline, but this stops well short of authorizing several successive grievance and appeal periods where the statute plainly provides for one.

¶ 22. Equally persuasive in this regard is the Legislature's clear intention that the grievance process move forward on a highly expedited basis, allowing no more than two weeks between notice and hearing, 32 V.S.A. §§ 4111(a), 4221; two weeks for completion of the hearing, *id.* § 4221; one week for notice of any corrections, *id.* § 4224; and two weeks for filing the corrected abstract as the town's grand list, *id.* § 4151. While a second appeal period and grievance meeting is possible within these limited time frames, the provision of so little leeway supports the conclusion that a *single* grievance proceeding was intended.

¶ 23. Nothing in this straightforward construction of the statute leads to absurd or unreasonable results, as the Town contends. Considerations of fairness amply support a legislative decision to restrict the number of reassessments and grievance proceedings to which a taxpayer must be subjected. The majority's suggestion in this regard that taxpayers suffered "no prejudice" is well wide of the mark. *Ante,* ¶ 14. Unless plainly authorized by the statutory language, taxpayers should not be forced to expend the time and resources, or to undergo the accompanying stress and strain, of grieving multiple reassessments at the sole discretion of the Town. Nothing in such a construction, moreover, compels the Town to accept on a permanent basis an incorrect assessment. As the majority recognizes, 32 V.S.A. § 4261 allows the Town to correct any "obvious error" even after the grand list has been lodged.

¶ 24. For all of the foregoing reasons, therefore, I would affirm the trial court's judgment.