2006 VT 118

## In re L.A.

[912 A.2d 977]

No. 05-368

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 17, 2006

*John J. McCullough III* and *Laura A. Gans* of *Vermont Legal Aid, Inc.*, Waterbury, for Appellant.

*William G. Sorrell*, Attorney General, Montpelier, and *David Bond*, Assistant Attorney General, Burlington, for Appellee.

¶ 1. **Johnson, J.** Patient L.A. appeals from a family court decision granting the Commissioner of the Department of Health's petition for involuntary psychiatric medication. Patient argues that the trial court erred by applying the wrong standard to determine whether he is competent to refuse medication. The family court ruled that patient was incompetent because he refused beneficial medications. We reverse and remand for a new hearing because the involuntary medication statute mandates that the family court decide whether patient is capable of making a decision about medication and appreciating its consequences. Although the family court made findings about L.A.'s mental illness, it did not make findings about L.A.'s

capacity to make the medication decision. Patient also argues that the Religious Land Use and Institutionalized Persons Act (RLUIPA) protects him from an order for involuntary medication because the medications would interfere with the practice of his religious beliefs. Because the Commissioner did not have a full opportunity to respond to this issue, and in light of our remand, we reserve judgment on patient's RLUIPA claim.

¶ 2. Patient is a sixty-four-year-old man who has been diagnosed with bipolar disorder, currently manic with psychotic features, and alcoholism. On April 15, 2005, patient was committed to the Vermont State Hospital (VSH) after having been arrested in Burlington for disorderly conduct. Although doctors have prescribed patient a regimen of psychiatric medications, he has refused to take them throughout his commitment. On June 29, 2005, the Commissioner filed a petition for involuntary medication pursuant to 18 V.S.A. § 7624. As the statute requires, the family court held an evidentiary hearing on the issue of patient's competence. 18 V.S.A. § 7625(a).

¶ 3. At the hearing, the Commissioner presented the testimony of Dr. Munson, patient's treating psychiatrist at VSH. Dr. Munson described patient's diagnoses and symptoms, including persistently elevated mood, hyperactivity, rapid speech, delusions, and threatening and sexually explicit interactions. Dr. Munson testified that he believed patient would pose a danger to himself or others outside the hospital, but conceded that he did not believe patient was particularly dangerous in the controlled environment at VSH. According to Dr. Munson, patient should be on a regimen of mood stabilizers, antipsychotics, and side-effect medications. He believes patient is incapable of rationally evaluating the risks and benefits of the medications, and is incompetent to make decisions regarding his medication.

¶ 4. Patient testified on his own behalf at the hearing, and described his objections to taking the medications. First, according to patient, he is "not a sick man." Patient did testify, however, that he understands that Dr. Munson believes that he is sick and that the medications would help him. He also acknowledged that the staff and even some of the patients at VSH have advised him that taking his medications would likely hasten his discharge. According to patient's testimony, though, he is concerned about how the medications will "affect" him. Patient described "a splendid relationship within [himself] and with the spiritual being that flows through [him]." According to patient, the medications would affect his "expression,"

thereby hindering his spiritual life. Finally, patient expressed concern about the physical side effects that accompany many psychiatric medications, including symptoms that mimic Parkinson's disease.

¶ 5. The family court made several factual findings based on the evidence presented at the hearing. The court found that patient suffers from bipolar disorder and alcoholism, and is delusional. It listed certain of patient's specific delusions, such as his apparent beliefs that he is the Prophet Elijah, and that he controls a submarine capable of firing missiles. The court also concluded that patient is dangerous at least some of the time. Based on patient's psychiatric symptoms and the effectiveness of medication in treating them, the court found that patient's prescriptions were warranted. Finally, the court concluded that patient did not demonstrate a specific religious objection to the medications. According to the court: "Insofar as he refuses altogether the medications that might benefit him, Patient is not competent to make a decision regarding the proposed regimen of treatment."

## I.

¶ 6. Patient first argues that the family court used the wrong standard to determine that he is incompetent to refuse medication. We agree that the family court failed to apply the standard articulated in the statute, "whether the person is able to make a decision and appreciate the consequences of that decision." 18 V.S.A. § 7625(c).

¶ 7. Under 18 V.S.A. § 7624(a), the Commissioner may file a petition with the family court for the involuntary medication of patients who refuse to accept them. The Commissioner bears the burden of proving patient's incompetence by clear and convincing evidence. *Id.* § 7625(b). The family court determines whether a person is competent to make decisions regarding medication based on "whether the person is able to make a decision and appreciate the consequences of that decision." *Id.* § 7625(c). The statute further provides, "[i]t is the policy of the general assembly to work towards a mental health system that does not require coercion or the use of involuntary medication." *Id.* § 7629(c).

¶ 8. If the court finds the patient competent, the petition is dismissed, and he may continue to refuse medication as he wishes. *Id.* § 7627(d). If, on the other hand, the court finds the patient incompetent, the court goes on to:

consider at a minimum, in addition to the person's expressed preferences, the following factors:

(1) The person's religious convictions and whether they contribute to the person's refusal to accept medication.

(2) The impact of receiving medication or not receiving medication on the person's relationship with his or her family or household members whose opinion the court finds relevant and credible based on the nature of the relationship.

(3) The likelihood and severity of possible adverse side effects from the proposed medication.

(4) The risks and benefits of the proposed medication and its effect on:

(A) the person's prognosis; and

(B) the person's health and safety, including any pregnancy.

(5) The various treatment alternatives available, which may or may not include medication.

*Id.* § 7627(c). If the above factors support involuntary medication, "the court shall make specific findings stating the reasons for the involuntary medication by referencing those supporting factors." *Id.* § 7627(e).

▮ ¶ 9. Thus, the statute outlines two steps in deciding whether involuntary medication is appropriate for a patient. In the first step, the family court determines whether the patient is competent to refuse medication. Second, the court considers, based on the factors outlined in § 7627(c), the merits of involuntarily medicating the patient. Whereas the first step is focused entirely on the patient's decision-making ability, the second step is focused on the potential benefits and risks of the medication. Therefore, there may be circumstances in which a competent patient may refuse medication that would most likely benefit him. Likewise, the family court could find a patient incompetent to refuse medication, yet still conclude that involuntary medication is not appropriate.

¶ 10. It is important to understand that, in the involuntary medication context, the competence inquiry is dictated by the statutory language. The standard is different, and more difficult for the Commissioner to meet, from the standard for determining whether a person may be involuntarily committed because the statute focuses

solely on the patient's decision-making abilities, as they may or may not be affected by mental illness — not the fact of the patient's diagnosis alone, or the merits of the psychiatrist's medical advice. If a mere diagnosis were the end of the analysis, it would preclude the need for a petition procedure altogether.

¶ 11. In this case, the family court concluded that "[i]nsofar as [patient] refuses altogether the medications that might benefit him, [p]atient is not competent to make a decision regarding the proposed regimen of treatment." The court's reasoning, however, fails to address the first step in the involuntary medication analysis. Every patient who is the subject of a petition for involuntary medication has refused prescribed medication. Indeed, the statute applies only to patients who have refused medication. 18 V.S.A. § 7624. Thus, the fact that patient has "refuse[d] altogether" the medication at issue can have no bearing on his competence; otherwise, the statutory inquiry into competence would be superfluous. See *Judicial Watch, Inc. v. State*, 2005 VT 108, ¶ 14, 179 Vt. 214, 892 A.2d 191 (stating that we will not interpret a statute in a way that renders language surplusage).

¶ 12. Nor can it be relevant to the court's consideration of patient's competence that the medications "might benefit" him. As discussed above, the involuntary-medication analysis does not reach the issue of whether medication is beneficial until the court has first determined that a patient is incompetent to make a medication decision. *J.L. v. Miller*, 174 Vt. 288, 291, 817 A.2d 1, 3 (2002) (noting that "upon a finding of incompetence, the family court is required to determine whether involuntary medication is supported by the factors enumerated in § 7627(c)"). The fact that the medication might benefit him — as is generally expected of medication — cannot be enough to conclude that patient is incompetent. The Legislature intended the statute as a step toward a wholly voluntary system of psychiatric medication. 18 V.S.A. § 7629(c). As long as patient can understand the consequences of refusing medication, the statute permits him to do so, even if refusing medication will be to his detriment. In other words, a person who is competent to make a medication decision within the meaning of the statute has the same right as any other person to refuse beneficial medication.

¶ 13. The Commissioner argues that § 7625(c) includes the inherent condition that a patient's decision must be rational, and that the

family court implicitly determined that patient's decision was irrational. The Commissioner asserts that we approved such a standard in *In re R.L.*, 163 Vt. 168, 657 A.2d 180 (1995). In that case, we reviewed the family court's decision regarding a patient's involuntary commitment to VSH. The patient contested the Commissioner's petition for involuntary commitment on the grounds that he was willing to accept treatment at VSH voluntarily. We reasoned that the family court could consider the patient's capacity to consent to treatment, including whether he was capable of making reasonable judgments, in deciding whether voluntary commitment was appropriate. *Id.* at 174-75, 657 A.2d at 184-85.

¶ 14. The Commissioner's reliance on *In re R.L.* in this case is misplaced. Here, instead of involuntary commitment, we consider involuntary medication, which is governed by an entirely different standard. Whereas involuntary commitment ultimately depends on whether a person has mental illness and poses a danger of harm to himself or others, involuntary medication depends on a person's ability to make decisions and appreciate their consequences. Compare 18 V.S.A. § 7101(17) (governing involuntary commitment) with *id.* § 7625(c) (governing involuntary medication).[1] The facts underlying a patient's involuntary commitment cannot alone support involuntary medication. In this and many other cases, involuntary commitment is a prerequisite to the Commissioner's petition for involuntary medication.[2] *Id.* § 7624(a). Involuntary medication is an even further intrusion on a patient's autonomy than involuntary commitment, and the standards we have applied to commitment determinations are inapposite.

¶ 15. We agree with the Commissioner, however, that the consequences patient must be able to appreciate must be real, and not imaginary or delusional. Nevertheless, the statute requires only that patient appreciate those consequences, not that he make the best decision in light of those consequences, or that he agree with his

---

[1] We decided *In re R.L.* in 1995, prior to the Legislature's current expression of its intent to achieve a more voluntary treatment system. 18 V.S.A. § 7629(c).

[2] The Commissioner may also commence involuntary medication actions for persons who have previously been committed to the hospital, and are currently out of the hospital on an order of nonhospitalization, or for persons committed to the custody of the Commissioner of Corrections, and for whom the Commissioner of Corrections and the Department of Developmental and Mental Health Services agree that involuntary medication would be appropriate. 18 V.S.A. § 7624(a).

psychiatrist. The family court and the Commissioner appear to assume that there is only one competent choice patient could make — to follow his doctor's advice and accept medication. Neither the court nor the Commissioner attempt to discern what patient perceives as the consequences of his decision to refuse medication. If patient's disagreement with his psychiatrist were sufficient to find him incompetent, the family court would have to grant every petition for involuntary medication filed by the Commissioner.

¶ 16. Without conceding that the family court employed the wrong standard, the Commissioner urges us to consider the decision as a whole, and rely on the court's findings to affirm its conclusion that patient is incompetent. See *Caledonian-Record Publ'g Co. v. Vt. State Coll.*, 2003 VT 78, ¶ 7, 175 Vt. 438, 833 A.2d 1273 (noting that we may affirm a judgment where the correct result was reached for the wrong reason). The court's findings, however, are inadequate to support such a conclusion. The court's findings regarding patient's delusions, and his illness in general, have an impact on the competence determination only insofar as they reflect his ability to make decisions. 18 V.S.A. § 7625(c). Because mental illness and psychotic symptoms are almost invariably present in the context of involuntary medication petitions, the court must do more than list patient's symptoms; it must specifically examine how they affect his decision-making capabilities.

¶ 17. The court made no specific findings about patient's ability to make a decision or to appreciate the consequences of that decision, such as patient's fear of developing known physical side effects from the medication. Moreover, although the court addressed the factors in § 7624(c) in great detail, these factors do not enter the analysis until the court has first made a finding that patient is incompetent. *Supra*, ¶¶ 8-11. Certain of the court's other findings are irrelevant to either the competence standard or the factors in § 7624(c). We can find nothing in the court's decision that would support any determination as to whether patient is competent to refuse medication under the statute. Accordingly, we reverse. In light of the possibility that patient's condition may have changed during the pendency of this appeal, we remand for a new hearing regarding patient's competence.

## II.

¶ 18. Patient next asserts that his medication refusal is protected by the federal Religious Land Use and Institutionalized Persons Act (RLUIPA) because involuntary medication would impede his religious exercise. RLUIPA provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>    (1) is in furtherance of a compelling governmental interest; and
>    (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "Religious exercise," under the statute, "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7)(A). To sustain a claim or defense under RLUIPA, the party raising the issue must first make a prima facie case that government action substantially burdens his religious exercise. Having done so, the government bears the burden of persuasion on all elements, except whether the challenged government action indeed substantially burdens the party's exercise of religion. *Id.* § 2000cc-2(b). Because RLUIPA is predicated on Congress' Commerce Clause and Spending Clause powers, the statute applies only to burdens that would affect interstate or foreign commerce, or programs receiving federal funds. *Id.* § 2000cc-1(b).

¶ 19. The Commissioner advances several arguments, both procedural and substantive, in response to patient's RLUIPA claim. First, the Commissioner argues that patient failed to raise the statute in a timely manner, thereby waiving the issue. The Commissioner also argues that patient has not presented facts to show that RLUIPA's jurisdiction, under either the Commerce Clause or Spending Clause, is triggered. See *Prater v. City of Burnside*, 289 F.3d 417, 433 (6th Cir. 2002) (noting that claimant "may not rely upon RLUIPA unless it first demonstrates that the facts of the present case trigger one of the bases for jurisdiction provided in that statute"). Even if patient's defense is properly before the Court, the Commissioner asserts that patient has not identified any specific religious exercise that involuntary medication will burden. According to the Commissioner, patient's claimed religious beliefs are actually manifestations of his

mental illness. Finally, to the extent that patient's religious exercise is burdened, the Commissioner argues that the burden of involuntary medication is not substantial, and is justified by the State's compelling interests.

¶ 20. The family court concluded that patient's opposition to psychiatric medication did not "constitute[] a religious exercise as that phrase is used in the Act." The court analyzed patient's RLUIPA argument concurrently with its analysis of patient's "religious convictions" — one of the factors the court was required to consider after finding patient incompetent, but before ordering involuntary medication — under 18 V.S.A. § 7627(c)(1). The court looked to the Oxford American Dictionary's definition of religion, concluding that "religion" means "belief in a personal God or gods entitled to obedience and worship; expression of this in worship; particular system of faith and worship; thing that one is devoted to." Applying this definition, the court concluded that it had "no clue as to whether [patient] believes in God or gods," and thus concluded that RLUIPA and 18 V.S.A. § 7627(c)(1) were inapplicable. Ultimately, the court concluded, patient's beliefs were "secular in nature, not religious," and thus, involuntary medication would not burden patient's exercise of religion.

¶ 21. Despite the court's decision to rule on this issue, we need not address the merits of patient's RLUIPA claim, as we agree with the Commissioner that patient failed to raise the issue in a timely manner. Patient's counsel mentioned RLUIPA for the first time during his closing argument. As a result, the Commissioner lacked notice of this claim, and was unable to examine the witnesses, or present any other evidence, in a manner that would address the elements of RLUIPA. Notice was especially important in this context because of the shifting burdens of production and persuasion facing patient and the Commissioner regarding the various RLUIPA elements. In this sense, RLUIPA was similar to an affirmative defense, which must ordinarily be raised in a party's responsive pleading. V.R.C.P. 8(c). "Rule 8(c) is a notice provision, intended to prevent unfair surprise at trial." *Merrilees v. Treasurer*, 159 Vt. 623, 623, 618 A.2d 1314, 1315 (1992) (mem.). Although 18 V.S.A. § 7624 does not provide for any responsive pleading to a petition for involuntary medication, and thus, Rule 8(c) is not technically applicable here, the policy underlying the rule is nonetheless implicated. To allow full

development of the requisite facts and arguments, patient should have raised his RLUIPA claim at the earliest opportunity.

¶ 22. Despite this waiver, patient may raise his RLUIPA argument again on remand if he so chooses. With adequate notice, the Commissioner will have an opportunity to present jurisdictional objections and substantive evidence in response to patient's argument. Similarly, patient will have an opportunity to argue, as he has in his appellate brief, in favor of a more expansive interpretation of religious exercise than the dictionary definition employed by the family court in its original decision. See, e.g., *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 714 (1981) (stating that "[t]he determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task" which should not "turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others"); *United States v. Seeger*, 380 U.S. 163, 185 (1965) (considering "whether the beliefs professed ... are sincerely held and whether they are, in [the believer's] own scheme of things, religious"); *United States v. Ballard*, 322 U.S. 78, 86 (1944) ("Religious experiences which are as real as life to some may be incomprehensible to others."). Thus, on remand, the notice concerns we have addressed above will no longer prevent the family court's full consideration of patient's religious concerns in light of both sides' arguments. See *Merrilees*, 159 Vt. at 623, 618 A.2d at 1315 (noting that Rule 8(c) need not apply where notice considerations are not implicated).

*Reversed and remanded for further proceedings consistent with the views expressed herein.*