941 A.2d 244 (2007)
2007 VT 119
In re L.A.
No. 06-466.
Supreme Court of Vermont.
October 25, 2007.

ENTRY ORDER
¶ 1. The State appeals from an order denying its petition to involuntarily medicate L.A., a patient who was committed to the Vermont State Hospital for ninety days by order of the district court on August 24, 2006. The trial court twice denied the State's petition because it failed *245 to produce sufficient evidence that it had made a reasonable inquiry as to whether L.A. had a durable power of attorney. It is the second of these orders, issued on September 25, 2006, that is the subject of this appeal.[*] We affirm.
¶ 2. The petition for involuntary medication was brought pursuant to 18 V.S.A. § 7624. Attached to the petition was the treating physician's affidavit, alleging the necessary elements of the statute, including the affirmation that L.A. did not have a durable power of attorney. See id. § 7624(c). At the first hearing on the petition, the trial court learned that L.A. had been living in the community on her own for approximately five years. She is divorced, but her former husband handles some aspects of her affairs when she is unwell. She has two adult children in Colorado. She has a long history of mental illness, hospitalizations and treatment. Her diagnosis, schizoaffective disorder, bipolar type, is characterized by highly disorganized thinking and mood symptoms of irritability and agitation. She refuses medication. At the time of the first hearing, her impairment was quite severe in the sense that she had no lucid spells. The only evidence the State produced on the issue of whether L.A. had a durable power of attorney was that L.A. had twice been asked if she had one and answered no each time. The trial court held that this evidence was insufficient under the statute and, in its ruling denying the petition, suggested that family members and medical providers known to the State should be consulted to ensure that no durable power of attorney existed. The court continued the hearing.
¶ 3. At the second hearing, the State put on the testimony of a social worker who had consulted L.A.'s former husband on the matter. The husband had reported that L.A. did not have a durable power of attorney. The social worker accepted this answer at face value. It was not clear whether L.A.'s husband had investigated L.A.'s personal papers or had any other basis of knowledge for his response. The social worker did not contact prior healthcare providers or the adult children for information that might lead to the discovery of a power of attorney. Again, the trial court denied the petition for the State's failure to make a reasonable, goodfaith effort to answer the threshold question of whether L.A. had a durable power of attorney. Because L.A. could not provide this information herself, and there was insufficient evidence on which to base a finding, the petition was dismissed without prejudice.
¶ 4. On appeal, the State claims that, the trial court erred by imposing on the State what it characterizes as a "heightened burden of inquiry" to prove that L.A. had not executed a durable power of attorney on health care. The. State further argues that this issue should not be considered part of the State's burden of proof, but is more properly a burden imposed on L.A. Even if the burden was properly imposed on the State, however, the State contends that the trial court erred in holding that it failed to prove, clearly and convincingly at the second hearing, that it made a sufficient, reasonable inquiry into whether L.A. had a durable power of attorney for health care.
¶ 5. The required elements of the State's petition for involuntary medication are set forth in 18 V.S.A. § 7624. Those elements include the treating physician's certification, executed under penalty of perjury, of *246 the nature of the person's mental illness, the necessity for involuntary medication, the proposed medication and its effects on the body, a statement of the risks and, benefits of the proposed medication, current relevant facts and circumstances, including the person's treatment history, potential alternatives and reasons for ruling out such alternatives, and "whether the person has executed a durable power of attorney for health care." Id. § 7624(c)(7). Indeed, the State filed a petition alleging these elements, including the treating physician's certification that L.A. had no durable power of attorney. Once the State filed its petition, the statute required that a hearing be held within seven days at which "the commissioner has the burden of proof by clear and convincing evidence." Id. § 7625(b).
¶ 6. Given the explicit language of the statute, the State's contention that it did not have the burden of proving a required element of its own petition by the degree of proof imposed on it by the statute is curious. Nevertheless, the State argues that, as a result of a federal court decision, which struck down a portion of Act 114 on involuntary medication, codified at 18 V.S.A. § 7626(b)-(c) and § 7627(i)-(j), the remainder of the statute, particularly § 7626(a) and § 7625, should not be interpreted to impose on the State the burden of proving that does not have a durable power of attorney. The State's argument stems from the decision in Hargrave v. Vermont, 340 F.3d 27 (2d Cir.2003).
¶ 7. In Hargrave, the federal court of appeals struck down a portion of the statute that allowed courts to override, without further procedural safeguards, durable powers of attorney for persons who were committed to the custody of the Commissioner of Mental Health, and to issue involuntary medication orders without regard to the committed persons' expressed wishes for medical treatment. 340 F.3d at 38-39 (upholding district court's decision in Hargrave v. Vermont, No. 2:99-CV-128 (D.Vt. Oct. 11, 2001), enjoining enforcement of 18 V.S.A. §§ 7626(b)-(c) and 7627(i)-(j)). Because committed persons were treated differently under these statutes from all other persons who might be subject to an involuntary medication order, the court of appeals held the statute violated the Americans with Disabilities Act. Id. The Hargrave decision had no effect on the other sections of the statute at issue herethose spelling out the elements of an involuntary medication petition, the State's burden of proof on the petition and the findings that must support any medication ordered by the court. See In re L.A., 2006 VT 118, 181 Vt. 34, 912 A.2d 977 (post-Hargrave decision interpreting provisions of the involuntary medication statute).
¶ 8. The State's argument rests on the faulty premise that the burden of proof specified in 18 V.S.A. § 7625(b) applied only to proceedings under § 7626. Because proceedings under § 7626 no longer exist the State contends that applying the burden of proof specified in § 7625(b) does not make sense. As noted above, however, the burden of proof specified in § 7625(b) applies to more than just proceedings under the now largely invalidated § 7626. Section 7625(b) places the burden of proof on the State in any hearing conducted pursuant to "this section." In this case, the hearing being conducted is the hearing required by the State's petition for involuntary medication, which must be held within seven days of filing. See id. § 7625(a). By virtue of § 7624(c), the elements of that petition require an affirmation that the person the State is seeking to medicate does not have a durable power of attorney. The trial court was correct that, notwithstanding the Hargrave decision, whether a durable power of attorney exists *247 is still a threshold question on which the State carries the burden of proof. The Legislature has not chosen to amend the statute in light of the Hargrave decision, and therefore we enforce the statute as it is written, without addressing the State's contention that a different policy is more logical.
¶ 9. What the State is really arguing is that it did enough to meet the reasonable efforts standard, and anything more required it to prove a negative, namely that L.A. had no power of attorney. All the trial court required, however, was a "reasonable good faith inquiry" to meet the threshold showing. The trial court was explicit, in its first ruling, that the State should pursue all known sources of information, including past medical providers and known family members, to meet the standard it set. The State, however, contacted only one source, accepted the answer at face value, and undertook no further inquiry. Far from requiring the State to prove a negative, the trial court properly held that the State failed to make a good-faith effort under the statute. Although the State makes a number of arguments as to why inquiries to health-care providers or others would not have produced the information, the fact remains that it failed to make any attempt in the first instance. Thus, we find no error with the trial court's ruling.
Affirmed.
NOTES
[*] In a subsequent proceeding, the State produced sufficient evidence to meet the statutory requirements, and an order of involuntary medication was issued. L.A. did not appeal, and that order is not at issue here.