Nos. 07-026 & 07-092

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed January 11, 2008

Motion for Reargument Denied January 30, 2008

*L.A.*, Pro Se, Waterbury, Appellant/Cross-Appellee.

*William H. Sorrell*, Attorney General, Montpelier, and *David Bond* and *Caroline S. Earle*, Assistant Attorneys General, Burlington, for Appellee/Cross-Appellant.

¶ 1. **Skoglund, J.** L.A., who has been involuntarily confined at the Vermont State Hospital (VSH) since April 2005, appeals from the family court's order granting the State's applications for continued treatment and for involuntary medication. In addition to defending that order, the State cross-appeals from the family court's determination that orders concerning involuntary medication are stayed automatically pending appeal pursuant to V.R.F.P. 12(a). We affirm.

¶ 2. This is the second time that L.A. has appealed to this Court from orders concerning his involuntary confinement and treatment at VSH. In his earlier appeal of an involuntary-medication order, he contended that the family court applied the wrong standard in determining that he was incapable of making a decision about taking medication and appreciating the consequences of that decision. We agreed that the family court failed to examine how L.A.'s illness affected his decision-making capabilities, and thus reversed and remanded the matter for another hearing regarding L.A.'s competence to refuse medication. *In re L.A.*, 2006 VT 118, ¶ 17, 181 Vt. 34, 912 A.2d 977. We also indicated that L.A. should be given an opportunity to assert his argument that his refusal to accept medication is protected by the federal Religious Land Use and Institutionalized Persons Act (RLUIPA) in the sense that involuntary medication would impede his religious exercise. *Id.* ¶¶ 18, 22.

¶ 3. On remand, following an evidentiary hearing, the family court granted the State's applications for continued treatment and involuntary medication. Taking into account the testimony of L.A.'s treating psychiatrist and other evidence, the court found, among other things, that (1) L.A. presented a danger to himself and others outside the supervised setting of the hospital; (2) as long as L.A.'s mental disorder remained untreated, the least restrictive alternative was hospitalization; and (3) L.A.'s ability to engage in

risk-benefit analyses and accurately assess the impact of his decisions on himself and others is severely impaired.

¶ 4. Based on these and other findings, the court concluded that L.A. was not competent to rationally assess the consequences of his decision not to take medication. Regarding L.A.'s claim that taking medication would impair his religious exercise, the court found, after noting L.A.'s failure to testify at the hearing, that L.A.'s concern about the medication interfering with his ability to prophesize was part of his grandiose delusional thinking caused by his mental disorder. The court declined to make any findings on whether RLUIPA applied to the Vermont State Hospital, stating that, even assuming it did, L.A. failed to establish a prima facie case that taking the prescribed medication placed a substantial burden on his ability to exercise his religious beliefs. Following the family court's decision, the State filed a motion to clarify whether its involuntary-medication order was stayed pending appeal. The family court determined that the order was automatically stayed under V.R.F.P. 12(a)(1) because involuntary-medication orders are not exempted from the automatic-stay rule in V.R.F.P. 12(a)(2)(B).

■ ¶ 5. At the outset, we conclude that L.A.'s substantive appeal of the family court's involuntary-medication order fails to raise any viable claim of error. L.A. left the family court evidentiary hearing without testifying. Further, he failed to present any significant evidence challenging the State's evidence presented in support of continued treatment and involuntary medication. Nor did he meet his burden of presenting a prima facie case that taking the prescribed medication would substantially burden his religious exercise. See *L.A.*, 2006 VT 118, ¶ 18 (noting parties' respective burdens regarding RLUIPA claims). For the most part, L.A.'s brief on appeal consists of a proposed compromise to his situation combined with a myriad of accusations against the State and declarations of his determination to thwart the system and fight for his freedom. In short, L.A. has failed to present any factual or legal basis for overturning the family court's order.

■ ¶ 6. The State's cross-appeal is another matter. The State asks this Court to rule that the automatic-stay provision in Rule 12(a)(1) does not apply to involuntary-medication orders. According to the State, a review of the relevant statute demonstrates that the Legislature did not intend for involuntary-treatment or

medication orders to be stayed automatically pending appeal, and thus we should construe Rule 12, which cannot override legislative intent, to exempt such orders from an automatic stay. Otherwise, in the State's view, patients could use the appeals process to indefinitely delay treatment found to be necessary by the family court. We conclude that Rule 12 does not exempt involuntary-medication orders from its automatic-stay provision, and that the rule is not inconsistent with the relevant statute.

¶ 7. Rule 12 was made part of the family court rules in 1991.[1] See V.R.F.P. 12(f). The rule mirrored V.R.C.P. 62 concerning stays following judgments, except that it excluded provisions inappli-

---

[1] The current text of the relevant parts of Rule 12 is as follows:

(a) **Automatic Stay Prior to Appeal; Exceptions.**

(1) *Automatic Stay.* Except as provided in paragraph (2) of this subdivision and in subdivision (c), no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 30 days after its entry or until the time for appeal from the judgment as extended by Appellate Rule 4 has expired.

(2) *Exceptions.* Unless otherwise ordered by the court, none of the following orders shall be stayed during the period after its entry and until an appeal is taken:

. . . .

(B) An order of involuntary treatment, nonhospitalization, or hospitalization, in an action pursuant to 18 V.S.A. §§ 7611-7623;

. . . .

(d) **Stay Pending Appeal.**

(1) *Automatic Stay.* In any action in which an automatic stay prior to appeal is in effect pursuant to paragraph (1) of subdivision (a) of this rule, the taking of an appeal from a judgment shall operate as a stay of execution upon the judgment during the pendency of the appeal, and no supersedeas bond or other security shall be required as a condition of such stay.

(2) *Other Actions.*

. . . .

(B) When an appeal has been taken from an order of involuntary treatment, nonhospitalization or hospitalization or involuntary treatment, in an action pursuant to chapter 181 of Title 18, the court in its discretion may, during the pendency of the appeal, grant or deny applications for continued treatment, modify its order, or discharge the patient, as provided in 18 V.S.A. §§ 7617, 7618, 7620, 7621.

cable to the family court. *Id.* Generally, under Rule 12(a), execution or enforcement of a judgment is automatically stayed through the thirty-day appeal period, except for certain specified orders. Rule 12(d)(1) provides that judgments automatically stayed under subsection (a) continue to be stayed pending resolution of appeals filed during the thirty-day appeal period. Thus, when a notice of appeal is filed with respect to judgments automatically stayed under Rule 12(a), the automatic stay continues throughout the entire appeal.

¶ 8. In 1987, before it was incorporated into the family court rules, Rule 62 was amended "to clarify the status pending appeal of orders of involuntary treatment, nonhospitalization and hospitalization pursuant to 18 V.S.A. §§ 7611-7623." Reporter's Notes, 1987 Amendment, V.R.C.P. 62. The amendment included such orders among "the category of cases in which trial court judgments go into effect upon issuance and remain in effect notwithstanding the pendency of an appeal, unless the trial court orders otherwise." *Id.*

¶ 9. When Rule 62 was amended in 1987, §§ 7611-7623 were the only sections contained in chapter 181 of Title 18. In 1998, however, the Legislature added §§ 7624-7629 to chapter 181. See 1997, No. 114 (Adj. Sess.), §§ 1, 4. Those sections establish procedures to petition for involuntary medication, see 18 V.S.A. §§ 7624-7628, and state the legislative intent in doing so, *id.* § 7629. In the same Act, the Legislature amended V.R.F.P. 12(d), in relevant part, by making it applicable to actions pursuant to "chapter 181 of Title 18" rather than "18 V.S.A. §§ 7611-7623." See 1997, No. 114 (Adj. Sess.), § 4a. In other words, the Legislature included within the scope of Rule 12(d) the involuntary-medication orders created by the same Act, in addition to the involuntary-treatment orders already covered by the rule. Notably, however, the Legislature did not amend Rule 12(a)(2)(B) — the relevant exception to an automatic stay — which continued to apply only to actions "pursuant to 18 V.S.A. §§ 7611-7623."

¶ 10. This takes us to the heart of the instant controversy. The State argues that the Legislature intended involuntary-medication orders to be treated the same as involuntary-treatment and hospitalization orders, and thus that we should construe Rule 12(a) as such so that it is consistent with the Legislature's intent regarding chapter 181 of Title 18. We decline to do so because we disagree with the State's premise — that the Legislature plainly

evinced its intent to treat involuntary-treatment and involuntary-medication orders the same with respect to stays pending appeal.

¶ 11. To the contrary, when the Legislature amended chapter 181 in 1998 by adding the provisions regarding involuntary medication, it explicitly replaced the term "18 V.S.A. §§ 7611-7623" with the term "chapter 181 of Title 18" in Rule 12(d)(2)(B) but not Rule 12(a)(2)(B). Plainly, there would be no purpose in automatically staying enforcement or execution of certain types of orders during the thirty-day appeal period but not during the pendency of an appeal from such orders. Thus, the State is compelled to argue that the Legislature's failure to make the references to Title 18 in Rule 12(a)(2)(B) and Rule 12(d)(2)(B) consistent was an oversight that must be corrected by this Court.

¶ 12. We find this argument unavailing. While the State views the more restrictive language of Rule 12(a) as an oversight, the Legislature's action suggests that it knew how to amend Rule 12 to include the new provisions of chapter 181, but nonetheless decided to do so only with respect to Rule 12(d) and not Rule 12(a).[2] Cf. *State v. LeBlanc*, 171 Vt. 88, 92, 759 A.2d 991, 993 (2000) ("If the Legislature intended for the savings clause to apply to third or subsequent convictions, it knew how to so specify."); *In re P.S.*, 167 Vt. 63, 70, 702 A.2d 98, 102 (1997) ("[T]he Legislature has clearly demonstrated that it knows how to specify a standard of dangerousness because it has included one in other subsections of the statutory section we are construing."); *Wolfe v. Yudichak*, 153 Vt. 235, 240, 571 A.2d 592, 595 (1989) ("If the Legislature had intended to specify that the election be made by the employer, the surrounding sections show that it knew how to implement that intent.").

¶ 13. Making such a policy choice is neither absurd nor inconsistent with chapter 181. As currently written, Rule 12(d)(2) allows the family court, in its discretion, to take certain actions during

---

[2] The State points out that Rule 12(d)(1) is subtitled "Automatic Stay" while 12(d)(2), which includes the subsection referring to actions under chapter 181, is subtitled "Other Actions," thus implying that involuntary-medication orders, which are included in chapter 181, are actions not automatically stayed. The short answer to this argument is that titles and subtitles do not necessarily evince legislative intent, particularly when the substantive text is unambiguous and inconsistent with the title or subtitle. See *United States v. Bushey*, 617 F. Supp. 292, 296 (D. Vt. 1985) (noting that titles or subtitles may be helpful in interpreting ambiguities within a statutory text, but cannot enlarge or control the words of the statute).

the pendency of an appeal from orders under chapter 181, including orders of involuntary medication. On the other hand, Rule 12(a)(2)(B) exempts from the automatic-stay rule only actions pursuant to §§ 7611-7623 — which do not include involuntary-medication orders. The Legislature may have determined that although the family court should be free to make further rulings following appeals in all actions under chapter 181, an exemption from the automatic-stay rule made sense in cases involving involuntary hospitalization, when the public could be threatened by allowing patients who were ordered confined based on clear and convincing evidence to automatically go free during the pendency of an appeal without weighing the relevant risks and benefits. For the same reason, the Legislature might want to automatically stay discharge orders under 18 V.S.A. § 7801.

¶ 14. By the same token, an exemption from an automatic stay would not necessarily be appropriate for involuntary-medication orders, considering the highly invasive nature of involuntarily medicating someone compared to the relatively low threat to the public posed by patients who will remain confined. Further, making involuntary-medication orders exempt from automatic stays would effectively defeat the substance of appeals from such orders. The appealing party would have already been medicated against their will notwithstanding the Legislature's avowed policy of moving towards a system that avoids involuntary medication, see 18 V.S.A. § 7629(c), or the merits of the patient's reasons for not wanting the medication. In short, we are not convinced that the Legislature's limiting of the exemption in Rule 12(a)(2)(B) to actions under §§ 7611-7623 was an oversight, as the State contends.

¶ 15. We find unpersuasive the State's argument that the statement of legislative intent contained in 18 V.S.A. § 7629 demonstrates that the Legislature would not have wanted an automatic stay to apply to involuntary-medication orders. The State appears to reason that the extraordinary safeguards implemented by the Legislature — the stringent standard of proof imposed on the State, the limited duration permitted for treatment and medication orders, and the stated policy of allowing coerced medication only when absolutely necessary — make it less likely that a medication order would be reversed, thereby negating the need for automatic stays of involuntary-medication orders.

¶ 16. We conclude that the statement of legislative intent contained in § 7629 cuts the other way, if anything. The Legisla-

ture explicitly states its intent to establish a policy that works "towards a mental health system that does not require coercion or the use of involuntary medication." *Id.* § 7629(c). In support of that policy, the Legislature recognizes the right of every person to determine whether to accept medication, "absent an emergency or a determination that the person is incompetent and lacks the ability to make a decision and appreciate the consequences." *Id.* § 7629(a). The Legislature protects this right through judicial proceedings prior to medication and by limiting the duration of involuntary-medication orders. *Id.* § 7629(b). Plainly, these provisions do not even vaguely support the notion that the Legislature did not intend to allow automatic stays of involuntary-medication orders. The Legislature expressed deep concern over coerced medication and wanted procedures in place to assure that it was done only when necessary. This suggests, if anything, that the Legislature would not be opposed to automatic stays of involuntary-medication orders pending appeal.

¶ 17. The State argues, however, that the Legislature could not have anticipated automatic stays of involuntary-medication orders because the maximum duration of such orders is limited to anywhere from ninety days up to one year (the maximum period for an order of hospitalization), see *id.* § 7627(g), and because such orders must require the treatment provider to conduct monthly reviews of ordered medication to assess a patient's continued need for involuntary medication, *id.* § 7627(f). According to the State, if involuntary-medication orders are automatically stayed, patients can indefinitely avoid such orders by continually appealing them, causing them to expire before any appeal can be decided.

¶ 18. We recognize that some appeals, like this one, can take many months to be decided. Nevertheless, although there is no procedure established in the statute for expediting appeals, the State may in any case seek an expedited appeal, which could significantly reduce the time period for deciding the appeal, even bringing it within the time frame of limited-duration involuntary-medication orders. Similarly, if it became obvious that a particular patient was attempting to abuse the process through continued frivolous appeals of involuntary-medication orders, the State could seek an expedited procedure for review of the appeals.

¶ 19. Finally, the State briefly contends, without citation to authority, that the words "execution" and "enforcement" in Rule

12(a)(1) suggest that automatic stays apply only when further court action is required to give effect to a judgment, which is not the case with involuntary-medication orders. We find no merit to this argument. Rule 12(a)(1) provides that "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement" until the appeal period has expired. Relevant to this provision, execution is defined as "[t]he act of carrying out or putting into effect (as a court order)." Black's Law Dictionary 589 (7th ed. 1999). The statute provides that if the family court grants a petition for involuntary medication, the court must "enter an order authorizing the commissioner to administer involuntary medication to the person." 18 V.S.A. § 7627(f). The plain language of the rule prevents the commissioner, pending appeal, from carrying out the order by administering the medication.

¶ 20. In sum, an automatic stay applies to involuntary-medication orders under the plain language of Rule 12, which was explicitly amended by the Legislature in 1998 with respect to such orders. The State believes that the apparent application of the automatic stay in Rule 12(a)(1) to involuntary medication-orders is an oversight on the part of the Legislature and the rules committee. For the reasons stated above, we are not persuaded that that is the case. If the State believes that the rule offends the statute, its recourse is to approach the Legislature for relief.

*Affirmed.*