STATE OF VERMONT

ENVIRONMENTAL COURT

|                                      |   |                          |
|--------------------------------------|---|--------------------------|
| In re: White Major Subdivision       | } | Docket No. 237-11-07 Vtec |
|   Application              | } |                          |

Decision and Order on Cross-Motions for Partial Summary Judgment

Appellants Richard and Linda White appealed from a decision of the Development Review Board (DRB) of the Town of Norwich, denying Appellants' application for a major subdivision. Appellants are represented by Paul S. Gillies, Esq.; the Town of Norwich is represented by Frank H. Olmstead, Esq. The Town of Norwich has since adopted the procedures for on-the-record review of the decisions of its DRB; this application, however, predates that change, so that the appeal of this decision remains de novo.

The parties have each moved for summary judgment on Question 1: whether Appellants "should qualify for" a waiver of § 3.3(D)(2) of the Subdivision Regulations (Regulations) for the proposed access road to Lots 4 and 5 of the subdivision, pursuant to § 2.1(D) of the Regulations. The following facts are undisputed unless otherwise noted.

Appellants applied for a five-lot subdivision. Neither party has provided a copy of the proposed site plan, so that the following descriptions are taken from the statements of undisputed facts. Appellants now propose to access Lots 4 and 5 by a shared driveway or access road on an existing old logging road. The old logging road crosses a hill that has a slope exceeding 25%. The construction of the driveway would involve cutting some trees, and some earth moving (both cutting and filling) to create the roadway and shoulders, and the associated ditching and culverts.

When construing municipal regulations, the Court applies the ordinary rules of statutory construction. In re Casella Waste Mgmt., Inc., 2003 VT 49, ¶ 6, 175 Vt. 335, 337.

1

The Court must first determine if the plain meaning of a regulation can resolve the interpretative conflicts without doing violence to the municipal regulatory scheme, "always bearing in mind that the paramount function of the court is to give effect to the legislative intent." Id. (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)) (internal quotation marks omitted). If the plain meaning is in doubt, the Court must determine that legislative intent through consideration of the entire regulatory scheme. Murdoch v. Town of Shelburne, 2007 VT 93, ¶ 5. The Court seeks to create a harmonious whole, and to avoid construing any part of the regulation as ineffective or superfluous. Id. (citing Ran-Mar, Inc. v. Town of Berlin, 2006 VT 117, ¶ 5, 181 Vt. 26, 29 and In re L.A., 2006 VT 118, ¶ 11, 181 Vt. 34, 39).

Section 2.1(D) of the Regulations gives the DRB[1], and hence this Court in this de novo appeal, the authority to waive the following two categories of subdivision requirements: either (i) the subdivision application requirements and the preliminary plat review and associated public hearing requirements, or (ii) the Article 3 development review standards. Section 2.1(D) sets out different considerations for each of these two categories of waiver. For waiver of any of the Article 3 standards, the applicant is required to establish:

> that due to the special circumstances of a particular site, the requirements of the development review standards for which waiver is sought will create an unreasonable hardship or adversely affect significant natural resources, rural character, or aesthetics[,] and that granting the waiver will be consistent with the purposes of [the subdivision] regulations.

Regulations § 2.1(D). Section 2.1(D) goes on to require the DRB (and hence this Court in this de novo appeal), before granting a waiver of any of the Article 3 standards, to make

---

1 The Subdivision Regulations still contain references to the Planning Commission rather than to the DRB, which has taken over the Planning Commission's permit-issuing functions since the adoption of the Regulations. This decision will refer to the DRB throughout.

2

affirmative findings on all four of the following requirements, including the rationale for each finding:

- [t]hat the development review standards for which the waiver is sought will create an unreasonable hardship or adversely affect significant natural resources, rural character, or aesthetics[;] and
- [t]hat granting the waiver will be consistent with the purposes of [the subdivision] regulations[;] and
- [t]hat, in consultation with the fire and police chiefs, granting the waiver will not adversely affect public safety[;] and
- [t]hat granting the waiver will not adversely affect the character of the neighborhood.

Id.

Article 3 of the Regulations sets out the "Planning and Design Standards" applicable to subdivisions. The standards in § 3.3 deal with the suitability of land for subdivision and the protection of fragile features and natural and cultural resources. Section 3.3(D) of the Regulations provides that "[s]ubdivision boundaries, lot layout and [d]evelopment [e]nvelopes shall be located and configured to minimize adverse impacts to slopes greater than 15%, to avoid disturbance to slopes in excess of 25%, and to avoid the placement of structures on prominent knolls and ridgelines" and provides "[m]ethods for avoiding such impacts," including but not limited to seven methods that may be referred to as §§ 3.3(D)(1) through (7).

The method described in § 3.3(D)(2) is that "[e]xcavation, filling[,] and development on slopes in excess of 25% shall be avoided." The method described in § 3.3(D)(6) is that "[a]ccess roads, including the conversion of logging roads to private roads or driveways, and utility corridors, shall use or share existing accesses and rights-of-way where feasible; follow existing contours to achieve angled ascents, and avoid areas of steep slope."

Whether a waiver is required

At the outset, Appellants question whether the phrase "shall be avoided" in

3

Regulations § 3.3(D)(2) is an outright prohibition on development on slopes in excess of 25%. If it is not, Appellants assert there is no need for a waiver.

As the "methods" provided in §§ 3.3(D)(1) through (D)(7) are by their terms a non-exclusive list of methods to achieve the protection established in § 3.3(D), the proper inquiry is instead whether the paragraph at the beginning of § 3.3(D) contains an outright prohibition on development on slopes in excess of 25%.

With regard to slopes,[2] that paragraph distinguishes between slopes greater than 15% (but less than or equal to 25%), on the one hand, and slopes in excess of 25%, on the other. Section 3.3(D) requires that subdivision boundaries, lot layout, and development envelopes "shall be located and configured to minimize adverse impacts" to slopes greater than 15% (but less than or equal to 25%). (Emphasis added.) Section 3.3(D) requires that subdivision boundaries, lot layout, and development envelopes "shall be located and configured . . . to avoid disturbance" to slopes in excess of 25%. (Emphasis added.) Thus, with regard to slopes greater than 15% (but less than or equal to 25%), the plain language of § 3.3(D) only requires impacts to be minimized, while with regard to slopes greater than 25%, the plain language of § 3.3(D) requires disturbance to be avoided. The plain language of Section § 3.3(D) prohibits disturbance of slopes that exceed 25%; as proposed, Appellants' subdivision plan therefore requires a waiver of (or variance from) this provision.

A comparison of the language used in the non-exclusive list of methods in § 3.3(D)(1) through (D)(7) supports this result. Section 3.3(D)(1) allows development on slopes greater than 15% if necessary to achieve the most desirable subdivision design for a site, with limiting conditions and erosion controls, while the prohibition in § 3.3(D)(2) does

---

2 It also requires avoidance of the placement of structures on prominent knolls and ridgelines, not at issue in the present case.

not provide for mitigating conditions.

Accordingly summary judgment must be granted in favor of the Town that Appellants' proposal requires a waiver of (or variance from) the requirements of § 3.3(D) relating to construction or site work on slopes greater than 25%.

Whether the proposal is eligible for consideration of a waiver

The Town contends that Appellants' proposal is not eligible to apply for a waiver of the § 3.3(D) provisions relating to development on slopes greater than 25% slope, due to the language of § 3.1(B). Section 3.1(B) states in full that:

> [i]n accordance with Section 2.1(D), the [DRB] may waive or modify one or more of the standards in Article 3 in situations involving subdivisions not resulting in the creation of more than 2 lots and, based upon the [DRB's] review under Sections 3.2 and 3.3, a determination that the subdivision clearly meets the intent of these regulations.

Five other subsections of the Article 3 Planning and Design Standards contain specific waiver provisions. Section 3.2(C), entitled "Waiver for Non-Development Lots," allows the DRB to waive the allowable density requirements of § 3.2 in situations involving the subdivision of land for non-development purposes. Section 3.2(C) contemplates that all created parcels are either larger than twenty acres in area or are reserved as open space or common land; it contains no limitation on the number of created lots.

Section 3.3(B) allows the DRB to waive the requirement of a designated development envelope in the case of small lots which would result in the dedication of significant tracts of open space. Section 3.3(B) contains no limitation on the number of created lots.

Section 3.3(J), entitled "Modifications for Norwich Village and cluster development," allows the DRB to "waive or modify" any of the § 3.3 standards within the Village Residential or Business zoning districts, or within a PRD or PUD, if the modification would result in a "more desirable settlement pattern" and if the impacts can be mitigated either on

5

or off site.  Section 3.3(J) contains no limitation on the number of created lots.

Section 3.6(B), dealing with fire protection and emergency access, allows the DRB to waive the listed requirements if it adds a requirement for the installation of an automatic sprinkler system as a condition of subdivision approval.  Section 3.6(B) contains no limitation on the number of created lots.

Section 3.8(F), entitled "Waivers," allows the DRB to waive the provisions of the regulations relating to water supply and wastewater disposal for lots whose intended use will not require water or wastewater disposal systems.  Section 3.8(F) contains no limitation on the number of created lots.

The Town argues that § 3.1(B) limits the DRB's authority to waive any of the Article 3 standards to those subdivisions that create no more than two lots.  This interpretation would make surplusage not only of § 2.1(D), but also of §§ 3.2(C), 3.3(B), 3.3(J), 3.6(B) and 3.8(F).  Rather, both a close reading of the plain language of § 3.1(B) and its interpretation in the context of the other waiver provisions in Article 3 can harmonize all the cited sections of the Regulations.

The plain language of § 3.1(B) makes it clear that it is only applicable to two-lot subdivisions (or boundary adjustments), just as the language in the other cited sections makes it clear that they are only applicable to specific situations in which water or wastewater systems are not needed (§ 3.8(F)); to specific situations in which fire hydrants are not needed (§ 3.6(B)); to specific situations in order to achieve a more beneficial settlement pattern in specific districts or types of development (§ 3.3(J)); to specific situations of small lots which would result in the dedication of significant tracts of open space (§ 3.3(B)) and to specific situations in which specific density requirements are not needed (§ 3.2(C)).  Section 3.1(B) does not by its terms restrict the DRB to waiver of the Article 3 provisions "only" in situations involving two-lot subdivisions.  The regulations could easily have been written to so restrict the DRB, simply by adding the word "only."

6

The Court will not read in the word "only" where it does not appear, and especially without any evidence that the drafters intended to preclude § 2.1(D) from applying to all major subdivisions and to many minor subdivisions.

Moreover, none of the six specific waiver provisions found in §§ 3.1(B), 3.2(C), 3.3(B), 3.3(J), 3.6(B) and 3.8(F) in any way limits the clear language of § 2.1(D)(ii), which allows the waiver of any of the Article 3 standards upon the more stringent showing required by § 2.1(D).

Therefore, Appellants' proposal is entitled to consideration of a waiver of the requirement of § 3.3(D) that subdivision boundaries, lot layout, and development envelopes shall be located and configured "to avoid disturbance to slopes in excess of 25%." The merits of that waiver application remain for trial, as does Question 2 of the Statement of Questions.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both parties' Motions for Summary Judgment on Question 1 are GRANTED in Part and DENIED in Part, in that Appellants' proposal requires a waiver of (or variance from) the requirements of § 3.3(D), but that Appellants are entitled to have that waiver request considered on its merits. A telephone conference has been scheduled (see enclosed notice) to discuss whether mediation of the remaining issues is now appropriate and to discuss scheduling a trial date on the merits of the waiver application and on Question 2 of the Statement of Questions.

Done at Berlin, Vermont, this 29th day of July, 2008.

_____
Merideth Wright
Environmental Judge

7